580 So.2d 1227 (1991)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION
v.
James Lee.
No. 89-CC-0830.
Supreme Court of Mississippi.
May 3, 1991.
Jan Garrick, Jackson, for appellant.
No Brief Filed for appellee.
Before DAN M. LEE, P.J., and McRAE and BANKS, JJ.
BANKS, Justice, for the court:

I.
The question now before the Court is whether taking a firearm to work in violation of company policy is a deliberate act which constitutes misconduct sufficient to disqualify a terminated employee from receiving unemployment benefits. We hold that it is. As a result we reverse the decision by the Adams County Circuit Court and reinstate order of the Mississippi Employment Security Commission's Board of Review.
*1228 The Appellee, James Lee, proceeds pro se and has not filed a brief in this appeal. We, nevertheless, consider this as a contested matter in order to give full effect to the purposes of our unemployment compensation law. A review of the transcript of the hearing before the Referee of the Board of Review of the Mississippi Employment Security Commission, Curnis Upkins, Jr., reveals that the facts are disputed. The Referee determined the following in his Findings of Fact:
The claimant [James Lee] was employed for approximately 1-1/2 years as an emergency medical technician with Humana Hospital, Natchez, Mississippi, ending on May 27, 1988, when he was discharged for violating company policy. Under company policy, there are certain offenses which could result in an immediate termination. Two of those offenses are possession of an unauthorized weapon on company policy [property], [and] threatening, intimidating or cursing patients or others.
On May 20, 1988, there was a verbal altercation between the claimant and a fellow employee [Leo Lewis][1]. The verbal altercation was settled between the two employees and no report was made to supervision about the argument. On May 22, 1988, claimant was talking with another employee [Jerry Campbell] in the urgent care unit. When claimant opened his brief case, the other employee saw a .25 caliber hand gun in the claimant's brief case. Still this incident was not reported to authorities. After the employee [Campbell] who had seen the gun found that there had been an argument between the claimant and another employee [Lewis], the employee who was involved in the argument with the claimant was informed about claimant's possession with a gun.
The verbal altercation incident and the gun incident were reported to supervision on May 26, 1988, by the employee [Lewis] who was initially involved in the verbal altercation with the claimant. On that same night, claimant reported to the hospital facility well in advance of his scheduled time to report for work. In light of the argument and the report of claimant possessing the gun, the hospital administrator [Donald Kannady] was called to the hospital. After verifying that the employee [Campbell] had indeed seen a gun in claimant's brief case, claimant was suspended pending an investigation. After the investigation was complete, the claimant was discharged for violating company policy.
On May 26, 1988, Ms. Elizabeth Carpenter, the Director of Nurses at the hospital, contacted Mr. Kannady telling him that Lee had allegedly made threats against Lewis, and the Shift Supervisor Ms. Lura Dean Jackson was concerned because Lee was at the hospital four or five hours earlier than his scheduled shift. Ms. Carpenter's concern apparently arose from a conversation she had had with Lewis earlier in the day. During the conversation Lewis told Ms. Carpenter of the problems between him and Lee, and that Campbell had informed Lewis that Lee had a gun in his brief case. Later that evening, Lewis appeared frightened by Lee's early presence at the hospital and made a point to notify Ms. Jackson every time he left his station. Lee had said he would be in the board room studying, but when Ms. Jackson tried unsuccessfully to find him, she contacted Ms. Carpenter who then called Mr. Kannady. When Mr. Kannady arrived at the hospital, he found Lee in a vacant patient's room watching a ballgame.
At the hearing before the Referee, Lee at first denied that he had had any disagreement with Lewis, but later agreed that Lewis might have interpreted what was said between them as a disagreement. Lee also denied that he had threatened Lewis or brought a gun onto company property. However, Mr. Campbell testified that when he asked Lee why he had a gun *1229 at work, Lee replied that it was "for protection against anyone messing with him." No one other than Campbell ever saw the gun in Lee's brief case.
Lee also asserted that on the evening of May 26, 1988, he had arrived early to work because that was when his ride could bring him to the hospital, and additionally, he had been in the board room studying but had left to take a break.
The hospital suspended Lee pending further investigation of the allegations. After talking with other employees Lee was terminated. After his termination Lee was given an opportunity to participate in the hospital's grievance procedure. Lee requested that the investigation of his alleged violations include the questioning of Ms. Arlene Wilson and Ms. Karen Frazier. Unfortunately for Lee, these employees did not support his claims. Ms. Wilson stated that Lee told her, "[i]f Leo messed with him he would take care of Leo." Ms. Frazier reported that Lee had told her that he did not speak to everybody when he came into the hospital that night because he did not want to have to shoot Leo in urgent care that night.
After completion of the hearing, the Referee denied Lee unemployment benefits. In his opinion the Referee stated that
there's much controverted testimony on the issue whether an actual threat was made against another employee and as to whether or not claimant possessed a gun on company property. After reviewing all this information, the Referee is of the opinion that the witness that saw the gun had no reason to fabricate his story about the gun because he neither knew of no argument at the time nor was he directly involved to end the incident. Therefore, substantial evidence has been shown that claimant did indeed violate company policy as far as reporting to the facility with an unauthorized hand gun. This action does constitute misconduct in connection with the work as that term is defined in the Law.
The conclusion of the referee was adopted by the Board of Review. On appeal the circuit court reversed without a written opinion.
This Court has stated clearly on numerous occasions that an agency's findings may not be disturbed by appellate courts where, in the absence of fraud, the factual conclusions are supported by substantial evidence and the relevant law was properly applied to the facts. See Shannon Eng. & Const. v. Mississippi Employment Sec. Comm'n, 549 So.2d 446, 449 (Miss. 1989); Mississippi Employment Sec. Comm'n v. Pulphus, 538 So.2d 770, 772 (Miss. 1989); Wheeler v. Arriola, 408 So.2d 1381, 1384 (Miss. 1982); Mississippi Employment Sec. Comm'n v. Fortenberry, 193 So.2d 142, 143 (Miss. 1966). Thus, in reviewing an order from the Board of Review of the Employment Security Commission, both the Circuit Court and this Court are limited to the Board's findings. Id.
There is evidence of record supporting the Board's findings that Lee knowingly violated company policy. Although Lee attempted on cross-examination to refute testimony offered by the Commission's witnesses, he only offered his own testimony to reinforce his assertions. The weight of the evidence offered fell against Lee and in support of the Board's findings. The Commission's finding on disputed facts that Lee had possession of a firearm may not be disturbed. The remaining question is whether the court below properly applied the law.

II.
The legislature has provided for an individual to be "disqualified for benefits ... for misconduct connected with his work, if so found by the commission, ... ." Miss. Code Ann. § 71-5-513(A)(1)(b). Though the Court has addressed employee "misconduct" in several cases, it has not addressed whether possessing a gun on company property and threatening fellow employees on company property both in direct conflict with company policy constitutes "misconduct" under the Code.
In previous cases, the Court has defined misconduct as

*1230 [c]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer came within the term.
Shannon Eng. & Const., Inc. v. Mississippi Employment Sec. Comm'n, 549 So.2d 446, 448-49 (Miss. 1989); Mississippi Employment Sec. Comm'n v. Borden, Inc., 451 So.2d 222, 225 (Miss. 1984); Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss. 1982) (citing Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941)).
The appellant cites Prior v. Unemployment Compensation Board of Review, 52 Pa.Cmwlth. 213, 415 A.2d 940 (1980), in which the claimant brought a small amount of gunpowder to work in violation of the company's policy prohibiting "carrying firearms, ammunition or any other kind of weapon on employee's person in the plant without company authorization." The court rejected the claimant's argument that the gunpowder was a minor infraction and did not rise to the level of willful misconduct. Rather, the court held that the purpose of the policy was to "prevent the possibility of threats to employees' safety by barring the introduction of potentially dangerous articles onto the employer's premises." Id. The court went further to say that the employer's interest in safety would be undermined by allowing an employee to bring gunpowder onto the premises. Id. The court denied unemployment benefits due to the claimant's misconduct.
Although in Prior, the claimant did not contest his possession of the powder, the considerations are the same as those now before this Court. Here, the record contains substantial evidence that Lee had possession of a gun on company property and that Lee had threatened Lewis. Either allegation, if true, is sufficient grounds for misconduct resulting in termination. The Board found both to be true.
Possessing a .25 caliber pistol on hospital property presents a serious hazard to patients, visitors, and other employees. The safety policy behind prohibiting such conduct is clearly to prevent injuries that might result. The same is true for threats against patients and others on hospital property. No evidence suggests that possession of the firearm was anything but deliberate, and, as such, it constitutes disqualifying misconduct within the meaning of the statute. Thus, Lee's actions warranted his disqualification from receiving unemployment benefits.
For the foregoing reasons, the judgment of the Adams County Circuit Court should be reversed and the decision of the Board of Review to deny benefits to Lee should be reinstated.
REVERSED AND ORDER OF MISSISSIPPI EMPLOYMENT SECURITY COMMISSION BOARD OF REVIEW REINSTATED.
ROY NOBLE LEE, C.J., and HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
NOTES
[1] The Mississippi Employment Security Commission subpoenaed Leo Lewis and Linda Davis on the morning of the hearing before the Referee, but neither arrived at the hearing. The Referee decided to continue the hearing until July 13, 1988, to allow the additional testimony. (Vol. II, Tr. 63). Neither witness appeared at the July 13 hearing.