# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CC-00472-SCT

*EVELYN JOHNSON*

*v.*

*MISSISSIPPI EMPLOYMENT*

*SECURITY COMMISSION*

*AND HERITAGE MANOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/1999 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES D. MINOR |
| ATTORNEYS FOR APPELLEES: | ALBERT B. WHITE |
| | JOHN WESLEY GARRETT, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 06/01/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/22/2000 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This case comes before the Court on appeal from the judgment of the Circuit Court of Grenada County, Mississippi, affirming the denial by the Mississippi Employment Security Commission of unemployment compensation benefits to Evelyn Johnson. Johnson was discharged from her position as a Licensed Practical Nurse at the Heritage Manor Retirement Home (also known as Grand Care, Inc.), in Grenada, Mississippi, for misconduct after she allegedly threatened to harm Louisa Minga, an invalid who was a long-term resident at Grand Care. The alleged threat was not made directly to Minga; instead, Johnson made the threat to Peggy Ragsdale, Minga's daughter. Ragsdale is an LPN at the Grenada County Jail, where Johnson had been taken into custody on an unrelated matter.

¶2. According to Ragsdale's testimony, Johnson stated, "You call yourself a nurse, Peggy Ragsdale, you ain't worth s***. I thought you was a nurse. You would not want your mother treated bad or hurt, would

you?" Grand Care subsequently discharged Johnson for employee misconduct.

¶3. Johnson then filed for unemployment compensation benefits. The claims examiner found Johnson was ineligible for the benefits since her dismissal was for employee misconduct. Johnson contested this finding, and a hearing was conducted before a referee from the Mississippi Employment Security Commission Board of Review. The Board adopted the findings of fact set out below and the opinion of the referee which affirmed the decision to deny benefits:

> Claimant was employed from February 28, 1995, to January 8, 1988, as an LPN with Heritage Manor, Grenada, Mississippi. She was discharged for making threatening remarks to a resident's daughter. Claimant was incarcerated at the local facility of Grenada, Mississippi. During her incarceration, she was experiencing physical difficulties. An employee of the county, an LPN, was asked to check on her about her physical infirmities. This LPN has a mother that is a resident at the facility where the claimant worked. While the LPN was trying to administer care to the claimant, she made a statement that this individual felt was threatening. She reported the incident to the facility and claimant was discharged. The LPN at the correctional facility heard the claimant state "you call yourself a nurse, Peggy Ragsdale, you ain't worth s***. I thought you was a nurse. You would not want your mother treated bad or hurt, would you?" The LPN felt it was a direct threat to her mother and was at the facility where the claimant was employed and took her threat seriously.

¶4. Upon the petition for review by Johnson, the circuit court affirmed the Board's decision, finding that it was supported by substantial evidence, was not arbitrary or capricious, was not beyond the scope of the power granted to the agency, and did not violate Johnson's constitutional rights. Aggrieved, Johnson filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

¶5. Miss. Code Ann. § 71-5-531 (Supp. 1999) governs the standard of review for appealing a Mississippi Employment Security Commission Board of Review decision to the circuit court and to this Court. This Court's judicial review is limited to questions of law. *Huckabee v. Mississippi Employment Sec. Comm'n*, 735 So. 2d 390, 393 (Miss. 1999) (citations collected). Miss. Code Ann. § 71-5-531 (Supp. 1999) states in pertinent part: "In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."

¶6. This Court's scope of review in an unemployment compensation case is limited to findings of the Board of Review, and an order of the Board on the facts is conclusive if supported by substantial evidence. Therefore, judicial review is limited to questions of law. *Coleman v. Mississippi Employment Sec. Comm'n*, 662 So. 2d 626, 627 (Miss. 1995). The denial of unemployment benefits will be disturbed on appeal only if (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope of power granted to the agency, or (4) in violation of the employee's constitutional rights. *Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors*, 621 So. 2d 1211, 1215 (Miss. 1993); *Mississippi Employment Sec. Comm'n v. Noel*, 712 So. 2d 728, 730 (Miss. Ct. App. 1998).

## STATEMENT OF THE LAW

## 1. WAS THE FINDING OF THE CIRCUIT COURT THAT THE DECISION OF THE

**BOARD OF REVIEW WAS SUPPORTED BY SUBSTANTIAL EVIDENCE, WAS NOT ARBITRARY OR CAPRICIOUS, WAS NOT BEYOND THE SCOPE OF THE POWER GRANTED TO THE AGENCY, AND DID NOT VIOLATE JOHNSON'S CONSTITUTIONAL RIGHTS, ERRONEOUS AS A MATTER OF LAW?**

¶7. Johnson contends that Grand Care failed to prove through substantial evidence that she made threatening statements which would warrant the denial of her unemployment benefits. Likewise, Johnson claims that the words she allegedly said would not constitute a threat to Ragsdale or her mother and that the words could not be a threat when considered within their context. Johnson maintains that the statement was not against the interest of her employer and that the statement could easily have been interpreted as a caring statement or a hostile statement. It is hard to imagine how the statement could be interpreted as "caring," but the issue raised is whether the facts as found by the referee are supported by substantial evidence and therefore conclusive.

¶8. Robin Skelton, administrator at Grand Care, testified that she received a phone call from Ragsdale stating that Johnson had been arrested for disturbing the peace or resisting arrest. Ragsdale also informed Skelton that Johnson made threatening statements to her concerning Minga. Ragsdale later provided a written statement regarding what Johnson had said to her that night at the jail. Ragsdale's written statement was the basis upon which Skelton terminated Johnson's employment. Johnson was discharged under the disciplinary policy of that institution for misconduct as defined in the employee handbook. Specifically, Johnson was discharged under class one, number 13 which is "misconduct or inappropriate behavior not listed which is the sole judgment of the company and which warrants immediate discharge." This employee policy is issued to all employees via the Employee Handbook.

¶9. Johnson maintains that she did not know Ragsdale, and therefore she could not have made a threat specifically directed at her mother who resided in the nursing home. The record reveals that Johnson initially testified that she did not know Ragsdale, though later Johnson also testified that she had seen Ragsdale at Grand Care. Ragsdale testified that Johnson knew her by name, and called her by her name the night of the alleged threat made at the jail. The statement "Peggy Ragsdale, I thought you was a nurse . . ., etc.," clearly indicates Johnson knew Ragsdale's name. When asked whether she knew if Ragsdale's mother was a resident at Grand Care, Johnson responded that she did not know, that she had to see a face to know somebody. However, Johnson also testified that she did indeed know Ragsdale's mother, knew that she was a resident at the facility, and that "everybody knows Ms. Minga."

¶10. Johnson claims that the record is poorly developed and confusing as to whether Johnson knew who Ragsdale was, and whether Johnson knew that Ragsdale was Minga's daughter. Johnson also states that the record does not provide any evidence that Johnson ever worked in the part of the facility where Minga resided. The hearing was conducted on two different dates. The first part of the hearing was held on February 26, 1998. Both Johnson and Skelton, the nursing home administrator, testified and produced documents. The hearing was reconvened on March 24, 1998, for the specific purpose of taking testimony from Ragsdale regarding the alleged threats made to her mother by Johnson at the jail. All who testified were subject to examination and cross-examination. If the record is poorly developed, it is not for want of opportunity to call and examine witnesses. This argument is without merit.

¶11. Johnson now contends that the alleged threat for which she was terminated was nothing more than "idle talk" intended to compare her to one of Ragsdale's loved ones in hopes of receiving better medical

attention. Johnson did not offer such an explanation during the hearing, rather she denied the incident occurred at all. Nothing in the record supports this belated assertion that Johnson was denied medical treatment.

¶12. Robin Skelton, administrator of the nursing home, testified that when the company learned that Johnson was incarcerated for disturbing the peace and resisting arrest, she was initially suspended pending the outcome of these charges. Skelton testified that the alleged threatening statements were initially reported by Ragsdale to Rochelle Raspberry, Director of Nursing. Skelton followed up, contacted Ragsdale and took a written statement. This written statement was made an exhibit and admitted into evidence. Although Johnson was convicted and fined on the criminal charges against her, Skelton testified that the only basis for Johnson's termination was the alleged threat made to Ragsdale. Johnson initially denied that she knew why she was being discharged, but later acknowledged that she remembered being told she was discharged for making a threatening statement.

¶13. Ragsdale testified that Johnson's cell was directly across from the medical room where she was working. While incarcerated, Ragsdale had tried to screen Johnson, but Johnson was belligerent and outspoken, uttered profanity, and refused to cooperate. After an unsuccessful attempt to screen her, Johnson was returned to her cell. It was at this point that Johnson made the statement about Ragsdale's mother and called Ragsdale by her name. Ragsdale testified that it was Johnson who brought up her mother and that they had not discussed anything relating to her mother prior to these comments. Ragsdale testified that she took the threat seriously because her mother was an invalid and unable to defend herself.

¶14. Johnson's employer testified that Ragsdale's statement was sufficient to establish work-related misconduct, and that making threats to a nursing home resident, even though the threat was made while not on the job, should be considered as work-related misconduct.

¶15. The referee followed Miss. Code Ann. § 71-5-513(A)(1)(b) (Supp. 1999), which states in relevant part as follows:

An individual shall be disqualified for benefits:

For the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the commission, and for each week thereafter until he has earned remuneration for personal services performed for an employer, equal to not less than eight (8) times his weekly benefit amount, as determined in each case.

¶16. For a definition of "misconduct" the referee relied on *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982):

The meaning of the term "misconduct," as used in the unemployment compensation statute, was conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in

judgment or discretion were not considered "misconduct" within the meaning of the statute.

(Citation omitted.) *See also Trading Post, Inc. v. Nunnery*, 731 So. 2d 1198, 1200-01 (Miss. 1999).

¶17. The referee further relied on the MESC Administrative Manual, Part V, Paragraph 1720, which states that an employee shall not be found guilty of misconduct for violation of a rule unless: (1) the employee knew or should have known of the rule; (2) the rule was lawful and reasonably related to the job environment and job performance; and (3) the rule is fairly and consistently enforced.

¶18. The referee concluded that Johnson was discharged for "misconduct" and that the comments made by Johnson should be considered threatening. Based on his findings of facts and conclusions of law, the referee disqualified Johnson for benefits. The Board of Review affirmed the referee's decision.

¶19. In addition to *Wheeler,* there are numerous cases which support the position that misconduct occurs under Miss. Code Ann. § 71-5-513(A)(1)(b) (Supp. 1999), where an employer establishes an applicable policy and standard of behavior, the standard is communicated to its employees, and the employee violates these policies. Under such circumstances employment can be terminated and the Board can deny unemployment compensation claims. *See, e.g., Mississippi Employment Sec. Comm'n v. Harris*, 672 So. 2d 739 (Miss. 1996) (teacher's willful disregard of employer's wishes in showing a movie which was"R" rated, and not related to the subject matter of the class being taught, to pupils who were under the age of 17 was misconduct); *Mississippi Employment Sec. Comm'n v. Percy*, 641 So. 2d 1172 (Miss. 1994) (falsification of time cards constitutes misconduct); *Richardson v. Mississippi Employment Sec. Comm'n*, 593 So. 2d 31 (Miss. 1992) (failure to maintain valid driver's license where job required it amounts to misconduct); *Booth v. Mississippi Employment Sec. Comm'n*, 588 So. 2d 422 (Miss. 1991) (unauthorized taking of a City vehicle by City of Pascagoula employee in violation of rules of employer, excessive absenteeism, and threatening other employees is misconduct); *Mississippi Employment Sec. Comm'n v. Flanagan*, 585 So. 2d 783 (Miss. 1991) (striking a child in violation of teacher's employer's disciplinary policy is misconduct); *Barnett v. Mississippi Employment Sec. Comm'n*, 583 So. 2d 193 (Miss. 1991) (claimant's failure to notify the employer of reasons for absence where employer requires such notice is misconduct); *Mississippi Employment Sec. Comm'n v. Lee*, 580 So. 2d 1227 (Miss. 1991) (taking a firearm to work in violation of company policy is misconduct); *Mississippi Employment Sec. Comm'n v. Martin*, 568 So. 2d 725 (Miss. 1990) (employer has lawful right to terminate employee who missed work because of a drinking problem); *Ray v. Bivens*, 562 So. 2d 119 (Miss. 1990) (sleeping on the job is misconduct); *Mississippi Employment Sec. Comm'n v. Sojourner*, 744 So. 2d 796 (Miss. Ct. App. 1999) (employee discharged for violating company policy by remaining on company premises after the end of his shift).

¶20. The evidence shows that Johnson violated provisions 1, 3, 8, 9, and 13 of her employee handbook, all of which provide call for immediate discharge. Moreover, number 13, the one relied upon for Johnson's termination, is a "catch-all" provision which states: "Misconduct or other inappropriate behavior not listed which in the sole judgment of the Company warrants immediate discharge." Even if provisions 1, 3, 8 or 9 were not sufficiently proved at the hearing, Johnson's termination was authorized by provision 13 of the employee manual.

¶21. The factfinder in the instant case concluded that a threat had been made to Ragsdale's mother at Grand Care. The testimony of the witnesses, Ragsdale's written statement, and the numerous inconsistencies and contradictions in Johnson's own testimony indicate that the findings of the referee are supported by

substantial evidence. The threat which was made is certainly contrary to the employer's interest in securing a safe and caring environment for its nursing home residents. Such a threat goes beyond inadvertency or ordinary negligence and was in substantial disregard of the employer's interests and of the employee's duties. *See **Wheeler***, 408 So. 2d at 1383.

¶22. The Court finds that the decision of the referee was supported by substantial evidence, was not arbitrary or capricious, was not beyond the scope of the powers of the Mississippi Employment Commission, and was not in violation of Johnson's constitutional rights. Furthermore, the Court specifically finds that Johnson's actions constituted "misconduct." See discussion of Miss. Code Ann. § 71-5-513(A)(1)(b) (Supp. 1999), supra.

### 2. WAS IT IMPROPER TO HAVE JOHNSON TESTIFY PRIOR TO HER ACCUSER AND NOT ALLOW REBUTTAL?

¶23. Johnson asserts that she was denied due process because she was "not allowed to rebut the statements made by Ms. Ragsdale." Johnson does not cite authority for this assertion, and the record does not support this position. As previously stated, the hearings were held on two separate dates. On the first date Johnson and Skelton, the nursing home administrator, testified. Upon completion of the first day of the hearing the referee stated the following:

> REFEREE: So, when you call her [Ragsdale] just tell her that's what I've done is continue the hearing . . . And what's going to happen is, we're going to meet back here at that particular time and I'm just going to ask Ms. Ragsdale a few questions and give you all time . . a chance to cross-examine and direct. Okay? Do you understand what I've done today?

> * * *

> REFEREE: And Ms. Johnson, do you understand?

> A. Yeah.

¶24. It is therefore evident that the second hearing was a continuance of the first, and that all parties were afforded an opportunity to direct and cross-examine witnesses. Johnson's attorney was able to cross-examine Ragsdale extensively. At the close of the second day of the hearing, Johnson's attorney argued that Johnson's comments were not a threat and were not employment related. Johnson's attorney also stated, "I have nothing else to say." If Johnson wished to rebut Ragsdale's testimony, she should have done so at this point. Johnson was not denied the opportunity to be heard or to prove her case. The record does not support Johnson's contention that she has been denied due process.

### CONCLUSION

¶25. Johnson received a fair hearing at which she was able to put forward her position, to call and examine witnesses, to introduce evidence, and to testify on her own behalf. The findings of fact of the Board of Review of the Mississippi Employment Security Commission are supported by substantial evidence and are neither arbitrary nor capricious. Johnson's actions constituted misconduct under Miss. Code Ann. § 71-5-513(A)(1)(b) (Supp. 1999), and as defined in ***Wheeler v. Arriola***, 408 So. 2d 1381, 1383 (Miss. 1982). For these reasons, the judgment of the Grenada County Circuit Court affirming the findings and order of the referee and board of review is affirmed.

¶26. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J.**

**BANKS, PRESIDING JUSTICE, DISSENTING:**

¶27. Because I disagree with the majority's holding that Ms. Johnson's conduct was "misconduct" under ***Wheeler v. Arriola***, 408 So.2d 1381, 1383 (Miss. 1982), I respectfully dissent.

¶28. The majority sets out the definition this Court gave to the term "misconduct" in ***Arriola***. ***Id.*** Misconduct must be established by clear and convincing evidence. Miss. Code Ann. § 71-5-513A(1)(c) (Supp. 1999); ***Young v. Mississippi Employment Sec. Comm'n***, 754 So. 2d 464, *2 (Miss. 1999). The majority, further, points out that the referee relied upon the MESC Administrative Manual, Part V, Paragraph 1720. This provided that the employee shall not be found guilty of misconduct *unless*: (1) The employee knew or should have known of the rule, which was violated; (2) the rule was lawful and reasonably related to the job environment and job performance; and (3) the rule is fairly and consistently enforced.

¶29. The MESC admitted into evidence the disciplinary portion of the employee's handbook provided to Johnson by the nursing home. Within the handbook was § *IV Standards of Conduct*, which outlined the company's discipline procedures. After an exhaustive search of this section, I failed to find which rule(s) was (were) violated by Johnson, which she knew or should have known her conduct was violating.

¶30. Even if the actions and comments of Johnson were interpreted by Ms. Ragsdale as a threat, I fail to see how such conduct violated the employee's handbook. First of all, there is no clear and convincing evidence that Johnson intended the remark to be a threat. She testified that she did not even know that Ms. Ragsdale's mother was a resident at the nursing home and that she had nothing to do with the treatment of Ms. Ragsdale's mother. The evidence was that Ms. Ragsdale's name was there to be seen on her badge. She did not share the same last name as her mother. It is Johnson's intent, not Ragsdale's interpretation, which must be considered in determining whether there was wilful misconduct.

¶31. The handbook neither explicitly nor implicitly prohibits an employee from getting into a verbal altercation away from the job in a situation not even remotely related to the job and making comments that may be taken as a threat toward a client. Therefore, I fail to see how the three prongs of the MESC Administrative Manual, upon which the referee relied, were met given these deficiencies. There is no showing of a wilful violation of an employer's rule here.

¶32. Did Johnson exude bad judgment by her conduct? Yes. It is not my view or contention that Johnson could not be terminated. Indeed, that issue is not before us. Nor do I suggest that one must violate some explicit rule in order to warrant termination. Obviously, explicit rules cannot be written to cover every situation. I suggest that the wilful rule breaking paradigm is simply inappropriate in the present circumstances. I also suggest that given the fact that the words reported were subject to more than one interpretation, it cannot be established and certainly was not established here, by clear and convincing evidence, that Johnson engaged in wilful misconduct as that term is defined by our case law interpreting this statutory scheme. Given this lack of clear and convincing evidence of wilful misconduct by Ms. Johnson, I

would reverse the judgments of the circuit court and the Mississippi Employment Security Commission and remand this case to the Commission with directions to award unemployment compensation benefits to Ms. Johnson.

¶33. Therefore, I respectfully dissent.

**McRAE, J., JOINS THIS OPINION.**