# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CC-01343-COA

**KENNETH HAULCY**                                              **APPELLANT**

v.

**MISSISSIPPI DEPARTMENT OF**                          **APPELLEE**
**EMPLOYMENT SECURITY**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/09/2013 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEYS FOR APPELLEE: | ALBERT B. WHITE |
| | LEANNE FRANKLIN BRADY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | AFFIRMED THE DENIAL OF UNEMPLOYMENT BENEFITS TO APPELLANT |
| DISPOSITION: | AFFIRMED - 06/09/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ROBERTS, J., FOR THE COURT:**

¶1.    The Coahoma County Circuit Court affirmed the Mississippi Department of Employment Security Board of Review's (Board of Review) decision denying Kenneth Haulcy's request for unemployment benefits. Haulcy appeals and asks this Court to determine whether the circuit court erred in affirming the denial of benefits because the Board of Review's decision was not supported by substantial evidence. We detect no error; therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Haulcy had been employed by Fitzgerald's Casino as a table-games dealer from March 26, 2008, until he was discharged on June 21, 2012. Haulcy filed his request for unemployment benefits on August 13, 2012, but following an investigation, Haulcy's request was denied because he "was discharged from employment . . . due to misconduct connected with the work." Haulcy appealed, and a hearing before an administrative law judge (ALJ) was held on November 26, 2012.

¶3.    At the hearing, Edward Pestian and Christopher Odle testified on behalf of Fitzgerald's Casino. Pestian, a table-game shift manager for Fitzgerald's Casino, explained that Haulcy was discharged "for poor guest service," specifically an incident that occurred on June 16, 2012. On that date, two guests provided written statements to management about Haulcy's poor behavior and bad attitude while he was their roulette dealer. Pestian also provided, and testified about, Haulcy's "Employee Coaching Record," which included three entries. Two entries were related to his performance as a dealer, and one entry, dated February 6, 2011, stated that Haulcy "was coached on his poor attitude and lack of guest service. [He] was told he needed to turn it around, because he was falling into bad habits." Pestian testified that Haulcy received an employee handbook, which outlined that there was a zero-tolerance policy for poor guest service, and that Haulcy was aware of this policy because, on December 26, 2011, Haulcy had signed a "Disclaimer and Acknowledgment of Receipt of Team Member Handbook."

¶4.    Chris Odle, an assistant table-games manager at Fitzgerald's Casino, also testified at the hearing. Odle testified that he was on duty the night of the June 16, 2012 incident.

According to Odle, the guests approached him to let him know that they felt that they had been "treated poorly by one of our dealers." Odle personally took the guests' written statements. Odle testified that he talked to the dealer that took Haulcy's place at the table, and the other dealer relayed that the guests were "nothin' but pleasant," and that the dealer had fun with the guests. On the same night as the incident with the guests, Odle prepared his own statement describing his conversations with the upset guests and his action of suspending Haulcy until there was an investigation.

¶5. Haulcy also testified as to his version of the events that occurred on June 16, 2012. Haulcy explained that he called this particular group of guests to his roulette table as they looked like they were leaving the casino. He said the guests told him they had never played before, but he said he would teach them to play. He denied he was ignoring the guests and giving too much attention to, i.e., flirting with, another guest. Haulcy said he had to correct one guest who wanted to toast drinks over the table, and believed that the reason the guests complained about him was because of this correction. Additionally, Haulcy denied any issues with his guest services, even though he acknowledged that he had been coached on his guest services prior to the June 2012 incident.

¶6. The ALJ determined that Haulcy had been terminated for misconduct related to his work and that Haulcy had been warned about his guest services and attitude prior to the incident that resulted in his termination. Haulcy appealed the ALJ's decision to the Board of Review. The Board of Review, "after careful review and consideration of all the evidence, . . . adopt[ed] the Findings of Fact and Opinion of the [ALJ] and . . . affirm[ed]

3

the decision."

¶7.     Haulcy then appealed the Board of Review's decision to the circuit court. The circuit court affirmed the Board of Review's decision, and Haulcy filed the present appeal. Haulcy asks this Court to determine "[w]hether the [circuit c]ourt erred in affirming the [Board of Review's] decision denying [Haulcy] unemployment benefits . . . [because the] decision was not supported by 'substantial evidence.'"

## ANALYSIS

¶8.     Appellate review of administrative-agency decisions is such that "[a]n agency's conclusions must remain undisturbed unless the agency's order[:] 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights." *Maxwell v. Miss. Emp't Sec. Comm'n*, 792 So. 2d 1031, 1032 (¶7) (Miss. Ct. App. 2001) (citations omitted).

¶9.     Haulcy submits that the ALJ's, the Board of Review's, and the circuit court's decisions that he was discharged for misconduct related to his work were in error because the decisions were based solely on hearsay. Specifically, Haulcy argues that the two written statements from the dissatisfied guests were hearsay and that Fitzgerald's Casino "failed to offer any additional evidence in corroboration of the two . . . written statements[.]"

¶10.    After a review of the record, we find that there was substantial evidence, not solely hearsay, to support the decision that Haulcy was terminated for misconduct.

¶11.    Fitzgerald's Casino provided an employee-handbook acknowledgment form signed by Haulcy, as well as Haulcy's employee record, which contained an entry relating to a

4

customer-service issue. At his hearing, Haulcy testified that he was familiar with Fitzgerald's Casino's policy on customer service and that one instance of poor customer service could result in termination. Haulcy also acknowledged that, in one other instance, he had been coached on customer service issues. In regard to the incident that led to Haulcy's termination, Fitzgerald's Casino provided two written statements signed by the aggrieved guests, which said they received "horrible service from [the] dealer[,]" who was "abrupt and rude." The guests complained that Haulcy was favoring and flirting with one guest and ignoring the rest of the table. Odle, who was present the night of the incident and took the guests' statements, also testified at the hearing. Odle testified that he was approached by the two guests, who complained that they had been treated poorly by Haulcy. Odle took their written statements, and he prepared his own written statement regarding the incident. Odle's testimony and written statement were consistent with the written statements provided by the guests.

¶12. Haulcy relies on *Williams v. Mississippi Employment Securities Commission*, 395 So. 2d 964 (Miss. 1981), in support of his argument that solely relying on hearsay is impermissible. However, as is clear, Fitzgerald's Casino presented more evidence than the two uncorroborated hearsay statements at the hearing upon which the Board of Review could have relied on in making its decision. Additionally, *Williams* is distinguishable from the present case because, in *Williams*, the employer provided nothing beyond a letter in support of its position. *Id.* at 966. The employer never appeared at any hearing or provided any other documentary evidence on its behalf. *Id.* at 965. Moreover, hearsay evidence is

5

admissible in Mississippi Department of Employment Security administrative hearings. *See Howell v. Miss. Emp't Sec. Comm'n*, 906 So. 2d 766, 770-71 (¶11) (Miss. Ct. App. 2004) (citing *Williams*, 395 So. 2d at 966) ("Hearsay evidence can be admitted in an administrative proceeding so long as uncorroborated hearsay is not considered sufficient to meet the substantial evidence standard."). As was outlined above, Fitzgerald's Casino provided legally sufficient evidence for the Board of Review to determine that Haulcy was terminated for misconduct connected with his work. Therefore, we find his issue to be without merit.

¶13. **THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY IS AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.**

**JAMES, J., DISSENTING:**

¶14. I respectfully dissent from the majority's opinion affirming the denial of Haulcy's unemployment claim by the Board of Review. According to the employer, Haulcy was terminated for "poor guest service." However, during the ALJ hearing, the guests who made the complaint did not testify. The witnesses who did testify, other than Haulcy, were not present during the incident from which the complaint arose.

¶15. The employer bears the burden of proving misconduct of the employee. *Seago v. Miss. Dep't of Emp't Sec.,* 158 So. 3d 392, 394 (¶7) (Miss. Ct. App. 2015). We have previously stated:

> The Mississippi Supreme Court has defined "misconduct" in unemployment benefits cases to mean "conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of

6

standards of behavior which the employer has the right to expect from his employee."

*Hunter v. Miss. Dep't of Emp't Sec.,* 120 So. 3d 435, 438 (¶8) (Miss. Ct. App. 2013) (quoting *Wheeler v. Arriola,* 408 So. 2d 1381, 1383 (Miss. 1982)).

¶16.    Beyond the uncorroborated statements by the aggrieved guests, Fitzgerald's Casino presented witnesses Christopher Odle and Edward Pestian to testify as to their investigation. Odle took the statements from the guests and interviewed the dealer that relieved Haulcy. Neither Odle nor the replacement dealer questioned had personal knowledge of the incident that was the subject of the original complaint.  The only witness there was Haulcy.

¶17.    Further, Haulcy was employed by Fitzgerald's Casino for over four years.  Haulcy was an experienced dealer.  While it is true that Fitzgerald's Casino provided evidence that Haulcy was aware of the no-tolerance policy for "poor guest service," there was no evidence to support the contention that Haulcy exhibited any "conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of [the] standards of behavior which the employer has the right to expect from his employee." *Id.* at (¶7).

¶18.    The supreme court has held that "[t]he denial of unemployment benefits will be disturbed on appeal only if (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope of power granted to the agency, or (4) in violation of the employee's constitutional rights." *Johnson v. Miss. Emp't Sec. Comm'n,* 761 So. 2d 861, 863 (¶6) (Miss. 2000).  Here, Fitzgerald's Casino failed to provide sufficient evidence of Haulcy's allegedly willful misconduct.  Therefore, I would reverse and render.

**IRVING, P.J., JOINS THIS OPINION.**