# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-CC-00144-COA

**MANDY BRIEANNA DUPREE**                                            **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF EMPLOYMENT**                    **APPELLEES**
**SECURITY AND CITY OF BAY SPRINGS,**
**MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/13/2025 |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | THOMAS L. TULLOS THOMAS LEWIS TULLOS II |
| ATTORNEY FOR APPELLEES: | ANNA ELIZABETH BURNS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION | REVERSED AND RENDERED - 03/03/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. The City of Bay Springs terminated Mandy Dupree's employment after she tested positive for Tetrahydrocannabinol (THC) after an oral swab drug test. Dupree sought unemployment compensation benefits, which were denied by the Mississippi Department of Employment Security (MDES) and the City of Bay Springs. Dupree appealed the denial of benefits to the Jasper County Circuit Court, which affirmed the denial. Dupree now appeals. We find that Dupree did not violate the City of Bay Springs' drug policy and therefore reverse and render this matter.

## FACTS AND PROCEDURAL HISTORY

¶2.    The City of Bay Springs operates and owns a natural gas system facility in accordance with the Mississippi Pipeline and Hazardous Materials Safety Administration (PHMSA). The City's policy for its covered pipeline employees mandated a drug test each time the employee received a phone call regarding problems with the gas line. Following the phone call, the company takes the employee to a clinic or hospital for testing, in accordance with the United States Department of Transportation (U.S. DOT) regulations. Each test is initiated by PHMSA and the Municipal Gas Authority of Mississippi under U.S. DOT regulations. Mandy Dupree began working for the City of Bay Springs as a "Community Development Planner" on December 1, 2022, and her employment was ultimately terminated on January 22, 2024. Dupree was considered a covered pipeline employee because she was added to a list of workers approved to answer calls related to the pipeline. Her duties were to answer phone calls relating to the City's natural gas system, to direct calls, and to run errands on behalf of the City's natural gas system facility. It is important to note that most of Dupree's duties as a Community Development Planner had nothing to do with the pipeline.

¶3.    On January 19, 2024, Dupree was informed that she was required to take a drug test following a call she received related to problems with the gas line. Dupree was escorted to Jasper General Hospital by a City employee, where an oral drug test was administered and her mouth was swabbed. The City of Bay Springs' drug policy specifically stipulated that the use, possession, or sale of intoxicating beverages, marijuana, or hallucinogenic drugs while on duty or at work under the influence may result in immediate discharge.

¶4.    On January 22, 2024, the City of Bay Springs' Board of Aldermen and the Mayor met to inform Dupree that she tested positive for THC, a primary active ingredient in marijuana and other cannabis products. During the meeting, Dupree explained to the Board that she consumed Delta-8 gummies that contained THC for pain management and that she bought the gummies over the counter. The Board ultimately voted to terminate Dupree's employment, and she was fired after the meeting. The next day, Dupree went to LabCorp in Laurel to get a blood test. Later that day, around 3:00 p.m., the City contacted Dupree and asked her to return to City Hall to undergo a urine test, which was conducted at Jasper General Hospital. On February 2, 2024, she received her blood test results from LabCorp showing she tested negative for THC and took the results to City Hall. Sometime later, the City of Bay Springs received Dupree's urine test results showing she tested negative for THC.

¶5.    On February 12, 2024, the Board of Aldermen held a special meeting to decide whether to reinstate Dupree's employment. The Board of Aldermen ultimately voted not to reinstate Dupree because it believed she violated the City of Bay Springs' written policies when she tested positive for THC on the oral test and admitted to taking over-the-counter THC gummies without a doctor's registration card. The city attorney sent Dupree a letter communicating the Board's decision.  Dupree timely applied to MDES for unemployment benefits and was later denied. She appealed that decision under Mississippi Code Annotated

section 71-5-519 (Rev. 2023).[1]

¶6.    On May 21, 2024, the Mississippi Department of Employment Security (MDES) held a hearing in response to Dupree's appeal of her unemployment benefits. The City of Bay Springs called Mayor Donald Brown and Cynthia Johnson as witnesses. Dupree spoke on her own behalf.  Mayor Brown took the stand and stated that he and Police Chief Daniel Gilmore attended the board meeting on January 22, 2024, when the decision was made to terminate Dupree. Brown stated that Dupree's first test, the oral swab, came back positive and that he was unaware that Dupree had tested negative on a subsequent blood test. Further, he explained that he did not speak with the medical review officer, R. G. Browning, about the results of the negative urine test. Lastly, he acknowledged that another employee had also tested positive from an oral exam on the same day Dupree did but was not terminated because the person had a medical prescription for THC.

¶7.    Next, Cynthia Johnson, the deputy city clerk of the City of Bay Springs, testified. In addition to serving as the deputy city clerk, Johnson also served as the director and as the designated employee representative for the U. S. DOT policy regarding PHMSA for the City. In her position, she on-boarded new employees and was responsible for making sure employees outside the crew completed drug tests. She explained that all employees underwent the same drug testing procedures. All new hires were required to take an oral drug

---

[1] *See* Miss. Code Ann. § 71-5-519 (allowing for tribunal appeals by the claimant or the employer to challenge an unfavorable decision).

test and received a policy manual, which they signed to confirm receipt. Johnson testified that on January 19, 2024, she took Dupree and another employee to the Jasper General Hospital to be tested with an oral swab. Both of their tests came back positive, and Johnson informed the mayor and city clerk. Johnson explained that the other employee who tested positive was retested, and the test result came back negative. Moreover, that employee was ultimately not fired because she had a medical prescription for THC. Johnson testified that at that time she was unaware that the saliva test was not considered a valid drug test under U.S. DOT regulations.

¶8. Lastly, Dupree took the stand and testified that she had never worked under the influence of drugs at any time while working at City Hall in Bay Springs. She represented that she had smoked marijuana in the past but never had any drug or alcohol problems. She explained that she had been suffering from pain and insomnia. In 2021, her pain management doctor at the University of Mississippi Medical Center verbally recommended that she start taking Delta-8 gummies, which she maintained are legal in Mississippi for anyone over 21 years old. She was not prescribed a medical marijuana card or given a prescription. Dupree testified that she bought the gummies near her house at a gas station called Fast Shop in Leland, and she knew that the same type of gummies were available in Bay Springs. Following her positive oral swab test, she stated that no one from the City had informed her of her right to contact a medical review officer and that she had never been contacted by one. She also represented that she never received a formal orientation or employee handbook

containing the drug policy.

¶9.    According to the City's statement of policy and scope, it has a "legal responsibility to comply with [U.S. DOT] regulations regarding the testing of certain company employees." The policy went on to explain that U.S. DOT regulations were on file with the City of Bay Springs and available for review by the designated employee representative at any time during regular working hours. It also included the City's drug policy, which states:

> [T]he City of Bay Springs, MS cannot condone and will not tolerate any of the following behaviors by its employees:
>
> > a. Use of Illicit Drugs
> >
> > b. Abuse of legal drugs (prescription or over the counter)
> > . . . .
> >
> > e. Arrival to work under the influence of drugs or alcohol
> >
> > f. Consuming illicit drugs or alcohol while working.
>
> With regard to those employees governed by DOT regulations, federal regulations shall be considered as preempting any inconsistent company policy, state, or local law or regulation. . . . This policy applies to any person who performs on a pipeline or liquidafied natural gas (LNG) facility or operation, maintenance, or emergency-response function.

¶10.    On June 17, 2024, MDES Board of Review upheld an Administrative Law Judge decision ultimately determining that Dupree was not entitled to unemployment benefits. Dupree then appealed to the Jasper County Circuit Court, which affirmed the Board's decision. She now appeals.

**STANDARD OF REVIEW**

6

¶11.    Under Mississippi Code Annotated section 71-5-531, factual findings by the board of review in any judicial proceedings, if supported by evidence, absent fraud, are conclusive, and the court "shall be confined to questions of law." Miss. Code Ann. § 71-5-531 (Rev. 2023); *see also Johnson v. Miss. Emp. Sec. Comm'n*, 761 So. 2d 861, 863 (¶5) (Miss. 2000); *Miss. Emp. Sec. Comm'n v. Lee*, 580 So. 2d 1227, 1229 (Miss. 1991); *Wheeler v. Arriola*, 408 So. 2d 1381, 1384 (Miss. 1982). "The standard of review in cases where this Court examines the circuit court's judgment to affirm the Board of Review's decision is abuse of discretion." *Skyhawke Techs. LLC v. Miss. Dep't of Emp. Sec.*, 110 So. 3d 327, 329-30 (¶6) (Miss. Ct. App. 2012). "An agency's conclusions must remain undisturbed unless the agency's order (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional rights." *Curtis v. Miss. Emp. Sec. Comm'n*, 878 So. 2d 1094, 1094-95 (¶2) (Miss. Ct. App. 2004) (quoting *Allen v. Miss. Emp. Sec. Comm'n*, 639 So. 2d 904, 906 (Miss. 1994)).

**DISCUSSION**

¶12.    Dupree contends that the circuit court erred by finding the City provided sufficient evidence that Dupree violated its drug policy, resulting in misconduct. Mississippi is an employment-at-will state, and as a result, employees can be terminated for any reason. *Southwood Door Co. v. Burton*, 847 So. 2d 833, 841 (¶27) (Miss. 2003) (citing *Slatery v. Ne. Miss. Contract Procurement Inc.*, 747 So. 2d 257, 259 (Miss. 1999); *Levens v. Campbell*, 733 So. 2d 753, 760 (¶24) (Miss. 1999); *Bobbitt v. Orchard Ltd.*, 603 So. 2d 356, 360-61 (Miss.

7

1992)). However, as a separate determination, an employee shall be disqualified from receiving unemployment benefits if he is discharged for misconduct connected to his work. Miss. Code Ann. § 71-5-513(A)(1)(b) (Rev. 2023). The burden of proof to show misconduct is on the employer. *Id*. § 71-5-513(A)(1)(c). The employer must prove misconduct connected to the work by substantial, clear, and convincing evidence. *City of Grenada v. Miss. Dep't of Emp. Sec.*, 320 So. 3d 523, 526 (¶16) (Miss. 2021).

¶13.    This Court has held that an employee will be "disqualified from receiving unemployment benefits where the employee violated an employer's policy or otherwise failed to meet a required condition of employment." *Miss. Dep't Emp. Sec. v. Clark*, 13 So. 3d 866, 871 (¶11) (Miss. Ct. App. 2009) (quoting *Halbert v. City of Columbus*, 722 So. 2d 522, 526-27 (¶19) (Miss. 1998)); *see Acy v. Miss. Emp. Sec. Comm'n*, 960 So. 2d 592, 595 (¶14) (Miss. Ct. App. 2007) (finding that an employee's conduct "may be harmful to the employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton or equally culpable"). "[N]umerous cases . . . support the position that misconduct occurs . . . where an employer establishes an applicable policy and standard of behavior, the standard is communicated to its employees, and the employee violates these policies." *Johnson v. Miss. Emp't Sec. Comm'n*, 761 So. 2d 861, 866 (¶19) (Miss. 2000).

¶14.    In *Clark*, an employee was denied unemployment benefits after being terminated for misconduct due to reporting to work under the influence of alcohol, which violated the

8

employer's policy. *Id.* at 868 (¶2). The employer had a clear policy outlined in the employee handbook, which prohibited employees from being at work under the influence of any intoxicating substance. *Id.* at 869 (¶3). In accordance with the drug policy, the employer administered an alcohol and drug test to the employee after he arrived at work smelling like alcohol. *Id.*

¶15.    Following the failed drug test, the employee claimed he did not know about the policy and had never received the company handbook, despite his signing an acknowledgment that he received and understood it. *Id.* at 869 (¶4). The employee also admitted to drinking three beers prior to reporting to work. *Id.* This Court found that the decision of MDES was supported by substantial evidence to show the employee's "misconduct" and that the decision was not arbitrary nor capricious. *Id.* at 873 (¶16). Accordingly, this Court held that the employee should not receive employment benefits because he violated the employer's drug policy, resulting in misconduct. *Id.*

¶16.    We find that Dupree's positive drug test did not amount to misconduct. The City of Bay Springs has a policy prohibiting employees from taking drugs or being under the influence at work. However, unlike *Clark*, where the employee clearly violated his employer's drug policy when he arrived at work smelling of alcohol, failed an administered drug test, and admitted to drinking three beers before his shift, the record does not show that Dupree was impaired at work or suggest that she was using drugs or under the influence at work.

9

¶17.    It is undisputed that Dupree tested positive for THC by an oral swab test. However, her other two subsequent tests returned negative results for THC. While Dupree acknowledged that she had smoked marijuana in the past, we do not find this admission implies that she was under the influence or ingesting THC at work. Dupree admitted to taking THC gummies based on her doctor's recommendation despite not having a medical card or prescription indicating that it was for a medical reason. However, unlike *Clark*, where the employee admitted to drinking three beers before work and showing up to work smelling like alcohol, there is no evidence Dupree ever showed up to work smelling of marijuana, nor were there any reports indicating she was high on the job.

¶18.    Further, unlike *Clark*, where the employer had a signed acknowledgment form from the employee confirming he received the employee handbook and understood the drug policy, here the City lacks evidence to show that Dupree received the policy handbook or understood its contents. Therefore, we find the circuit court erred in its determination that Dupree committed disqualifying misconduct because Dupree did not engage in misconduct under the City's drug policy and was improperly disqualified from receiving unemployment benefits.[2] Thus, we find that the decisions of the circuit court and MDES should be reversed

---

[2] Dupree argues in her brief that the City violated PHMSA guidelines following her positive oral test. A mandated medical review officer must attempt to contact the employee directly within 24 hours on a confidential basis about the positive drug test result and explain to the employee the options and resources, and that was not done here. *See* 49 C.F.R. § 40.131; *see also Southwood*, 847 So. 2d at 842 (¶31) (finding "if an employer wishes to disqualify an employee for unemployment benefits because of a positive result on a federally regulated drug test, the employer must at least produce clear and convincing evidence that

and that Dupree is entitled to the relief she was denied.

¶19.    **REVERSED AND RENDERED.**

> **WILSON, P.J., McDONALD, LAWRENCE, McCARTY AND WEDDLE, JJ., CONCUR. EMFINGER, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND LASSITTER ST. PÉ, J.**

> **CARLTON, P.J., DISSENTING:**

¶20.    I find that the City of Bay Springs provided sufficient evidence to show that Dupree violated the City's drug policy; therefore, I respectfully dissent from the majority's opinion.

¶21.    Mississippi Code Annotated section 71-5-513(A)(l)(b) provides that an individual may be disqualified for unemployment benefits if he was discharged "for misconduct connected with his work." Miss. Code Ann. § 71-5-513(A)(1)(b) (Supp. 2023). "The employer bears the burden of proving misconduct by substantial, clear, and convincing evidence." *Jackson Cnty. Bd. of Sup'rs v. Miss. Emp. Sec. Comm'n*, 129 So. 3d 178, 183 (¶12) (Miss. 2013). The Mississippi Supreme Court has defined "misconduct" as

> conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent[,] or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, [come] within the term.

the testing comported fully with the federal regulations"). Because we determined that Dupree's duties were not associated with the natural pipeline, she is not subject to the U.S. DOT guidelines, and our analysis ends there.

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982).

¶22. The record shows that Dupree was administered an oral drug test and tested positive for THC. Moreover, Dupree admitted to the Board of Aldermen that she consumed THC. The City of Bay Springs' personnel policy provides that the use of "intoxicating beverages, marijuana, or hallucinating drugs on duty or working under the influence of any of these substances" can result in disciplinary action, including immediate discharge. Although Dupree takes issue with the type of drug test the City of Bay Springs was required to administer pursuant to PHMSA and U.S. DOT regulations, the record is clear that Dupree was still expected to abide by the City of Bay Springs' drug policy. At the telephonic hearing before the administrative law judge, the attorney for the City of Bay Springs clarified that Dupree "was not dismissed according to the DOT rules and regulations. She was dismissed according to the policies of the City of . . . Bay Springs."

¶23. Because I find that the City of Bay Springs met its burden of proving Dupree's misconduct, I would affirm the denial of Dupree's unemployment benefits.

**BARNES, C.J., AND LASSITTER ST. PÉ, J., JOIN THIS OPINION.**