¶ 1. This case comes before the Court as an appeal from a denial ofunemployment benefits to Billy R. Douglas by the Board of Reviewof the Mississippi Employment Security Commission. The circuitcourt reversed the decision of the Board of Review and orderedDouglas's benefits to commence. The Commission perfected thisappeal. We reverse and render the judgment of the circuit court.
 I. Facts
¶ 2. Douglas was terminated from his employment at Quitman Knitting Mill *Page 1061 
when it was discovered that he had been manufacturing fake identification cards intended to resemble official State of Mississippi identification cards issued by the Mississippi Department of Public Safety. Though Douglas's activities in regard to these fake cards were not conducted while he was on duty at his employer's place of business, the activities came to light when photocopies of several of the cards were discovered in the personnel files of other employees at the plant. The cards were required as proof of identity in order for the plant to meet requirements of Immigration and Naturalization Service regulations intended to deter employment of illegal aliens.
¶ 3. The company claimed to have fired Douglas for violation of several provisions of its employees' handbook, including one that cautioned against "conduct away from the plant which adversely affects the employment relation, the Company's reputation, or the good will of the Community."
¶ 4. Douglas applied for unemployment benefits, but his request was ultimately denied when the Board of Review found Douglas's activities to be disqualifying misconduct connected with his work. The circuit court reversed the Commission's order of denial, finding that there was no evidence in the record to support a finding that Douglas understood that the production of these cards was wrongful or that he intended that his "customers" would use their fake identification cards to improperly apply for employment at Quitman Knitting Mill. As a result of the absence of such evidence, the circuit court concluded that a finding that Douglas's activities constituted misconduct related to his employment was not supported by the record.
¶ 5. On appeal to this Court, the Commission argues that there was substantial evidence in the record to support a finding that Douglas's behavior violated established company standards of behavior for its employees as set out in the employee handbook, including general admonitions against "dishonesty" and "misconduct," in addition to the above-quoted prohibition against certain behavior while not at work.
 II. Preliminary Comment
¶ 6. Douglas has failed to file a brief in the matter now before this Court. There is authority for the proposition that this failure can be taken as a confession of error. Mississippi StateHighway Comm'n v. Hurst, 349 So.2d 545, 546 (Miss. 1977). However, even in the absence of a brief from Douglas, we note the somewhat contrary proposition that the presumption of correctness that attaches to a lower tribunal's decision requires an appellate court to review the matter and affirm if it is convinced that the lower tribunal was manifestly correct. Shelton v. Kindred,279 So.2d 642, 644 (Miss. 1973). For that reason, we have elected to overlook the procedural bar and proceed to decide this case on the merits.
 III. Discussion
¶ 7. The circuit court, in deciding to award Douglas benefits, made two critical findings. First, it concluded that there was no proof that Douglas understood that the manufacture of these fake identification cards was wrongful. Secondly, the court found no evidence suggesting any connection between Douglas's activities and his work as there was no proof that he knew or understood that the cards would be used a proof of identity in connection with job applications at the plant.
¶ 8. The first finding was based entirely on Douglas's own testimony that he was unaware of the illegality of manufacturing these counterfeit cards. However, the manufacture of a forged identification card that purports to be an official card issued by the Mississippi Department of Public Safety is a crime. Miss. Code Ann. § 97-7-10 (Rev. 1994). The citizens of this State are necessarily charged with *Page 1062 
knowledge of and obedience to all the laws of the State. Douglas's denial of any knowledge of the wrongful nature of his activities is of no more avail to him in this proceeding than in a criminal proceeding where such lack of knowledge, even if professed, would have no particular relevance.See Paramount-Richards Theaters, Inc. v. City of Hattiesburg,210 Miss. 271, 282, 49 So.2d 574, 579 (1950). We find the circuit court's reasoning in this regard to be erroneous.
¶ 9. Nevertheless, concluding that the circuit court erred in finding Douglas to be unaware that his activity could be reasonably classed as a form of misconduct does not resolve the case. In order to be disqualified from unemployment benefits, an employee must be found to have been "discharged for misconductconnected with his work. . . ." Miss. Code Ann. § 71-5-513
(A)(1)(b) (Supp. 1999) (emphasis added). It is undisputed that Douglas was discharged for his involvement in the manufacture of these counterfeit cards, but that leaves unanswered the question of whether his actions can reasonably be seen as having some connection to his employment.
¶ 10. Proof limited solely to the fact that an employee engaged in criminal activity while away from the workplace has never been held to be disqualifying misconduct connected with his work within the meaning of Section 71-5-513(A)(1)(b). One decision of the Mississippi Supreme Court dealt with such a situation, but in that case, the court found a work-related connection between the conduct and the ability of the employee to thereafter properly discharge the duties of his employment. In City of Corinth v. Cox, a fireman was discharged after pleading nolo contendere to a charge of sale of cocaine and was disallowed unemployment benefits. City of Corinth v. Cox, 565 So.2d 1142 (Miss. 1990). In that case, the Mississippi Supreme Court focused on the adverse publicity the City had received from Cox's indictment. It also observed that a fireman's job involves great responsibility and necessarily requires a large measure of public trust. Id. at 1143. The court then concluded that
 [a]ny activity involving a fireman and illegal drugs is "conduct evincing . . . willful and wanton disregard of the employer's interest" and is "in deliberate [violation] or disregard of standards of behavior which the employer has the right to expect from his employee."
Id. (citing Wheeler v. Arriola, 408 So.2d 1381 (Miss. 1982)).
¶ 11. In the case now before us, there is no evidence that Douglas's employer received any adverse publicity by virtue of Douglas's activities. Neither is there any information that Douglas enjoyed a position of great trust and responsibility at Quitman Knitting Mill such that off-the-job criminal misbehavior, although bearing no direct connection to his work duties, would substantially undermine his ability to properly function in his job. Thus, we do not find City of Corinth v. Cox particularly helpful.
¶ 12. Having concluded that mere evidence of the type of criminal activity engaged in by Douglas while away from the job would not necessarily constitute disqualifying misconduct, we are left to explore whether Douglas's activities were intended to have, or could reasonably be anticipated to have, an adverse impact on the ability of Douglas's employer to conduct its business activities, a finding that would, in our view, supply the necessary connection between the improper activity and the claimant's work. Certainly, if the entire thrust of Douglas's scheme was to permit his customers to obtain employment at Quitman Knitting Mill under conditions that, if subsequently discovered by INS, would cause considerable regulatory difficulties for the company, then the mere fact that Douglas manufactured the fake identification cards while off duty would not relieve him from the consequences of his actions. *Page 1063 
¶ 13. Evidence on the question is sparse. Douglas, for his part, vehemently denied that he intended these cards to be used to gain employment at Quitman Knitting Mill. No direct evidence to the contrary was presented at the hearing on this issue. The only evidence touching on the subject was the uncontradicted fact that several of the cards were used for that purpose.
¶ 14. The issue then becomes whether this fact alone is sufficient to support an inference that Douglas knew or should have known that there was a reasonable likelihood that his counterfeit cards would be used in a manner likely to have a direct adverse impact on his employer.
¶ 15. While we consider that a close question, our review of the entire record satisfies us that the Board could reasonably conclude that, in the community where Douglas lived, it was commonly understood that anyone desiring employment at Quitman Knitting Mill would be required to submit appropriate identification and that an official Mississippi identification card was one of the typical means of accomplishing that requirement. Douglas's own rather incoherent attempt to explain what he thought his customers would use the cards for did not add weight to his protests of surprise that his cards were being misused in this manner.
¶ 16. We understand that the duty of a judicial body reviewing the findings of an administrative agency is limited such that, if there is substantial evidence in the record to support the agency's conclusions, the reviewing judicial body must affirm.Shannon Engineering Const., Inc. v. Mississippi Employment Sec.Comm'n, 549 So.2d 446, 449 (Miss. 1989). On balance, though the issue is close, we are satisfied that this record will support a finding that Douglas's activities should have been understood by him as creating at least a substantial likelihood that his counterfeit cards would be used in a manner inimical to his employer's interests and that his persistence in his activities despite being armed with that knowledge supplies the necessary connection between his illegal activities and his employment to disqualify him from unemployment benefits.
¶ 17. Because the Board of Review's decision ran along these lines and because of a reviewing court's obligation to give deference to the findings of the Board of Review if there is support for those findings in the record, we conclude that the circuit court erred when it substituted its own judgment on the matter for that of the Commission and awarded Douglas benefits. We, therefore, reverse and render the judgment of the circuit court. This action revives and makes final the finding of the Mississippi Employment Security Commission that Douglas was not entitled to unemployment benefits because he was discharged from employment for misconduct connected with his work.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY REVERSINGTHE DECISION OF THE BOARD OF REVIEW OF THE MISSISSIPPI EMPLOYMENTSECURITY COMMISSION IS REVERSED AND RENDERED.
KING AND SOUTHWICK, P. JJ., BRIDGES, LEE, MOORE, PAYNE, ANDTHOMAS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT WRITTENOPINION.