768 So.2d 341 (2000)
Barbara BRANDON, Appellant,
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION and Baptist Memorial Hospital-Golden Triangle, Appellees.
No. 1999-CC-01023-COA.
Court of Appeals of Mississippi.
October 3, 2000.
*342 Wilbur O. Colom, Attorney for Appellant.
John Wade Simmons, Albert B. White, Madison, Todd Eliot Taylor, Attorneys for Appellees.
BEFORE KING, P.J., BRIDGES, AND MOORE, JJ.
BRIDGES, J., for the Court:
¶ 1. This is an appeal from a decision on June 1, 1999, by Honorable Joseph H. Loper, Jr. of the Circuit Court of Lowndes County, Mississippi, affirming Barbara Brandon's disqualification from unemployment benefits. That court affirmed the decisions of the claims examiner for the Mississippi Employment Security Commission (MESC), rendered on July 1, 1997, a referee of the MESC on appeal, rendered on August 20, 1997, and the Board of Review of the MESC in a second appeal on October 2, 1997.
I. CAN AN EMPLOYEE BE DENIED UNEMPLOYMENT BENEFITS BASED UPON MISCONDUCT FOR VIOLATION OF A COMPANY POLICY, WHEN THE *343 EMPLOYEE HAS NEVER SEEN THE POLICY, THE POLICY IS SO VAGUE AS TO MAKE IT SPECULATIVE WHAT CONDUCT IS PROHIBITED, IS UNDATED, DOES NOT HAVE AN EFFECTIVE DATE, AND IF TAKEN LITERALLY IMPINGES UPON THE CONSTITUTIONAL RIGHTS OF THE EMPLOYEE?
II. IS IT MISCONDUCT IN CONNECTION WITH A JOB AS A HOSPITAL NURSE, WHO IS SEEKING POLITICAL OFFICE, TO BRING TO AND WITNESS A PATIENT'S APPLICATION FOR ABSENTEE BALLOT WHEN THE PATIENT MAKES THE REQUEST AND THE SERVICE IS PROVIDED DURING NONWORKING HOURS?
¶ 2. Finding error on the part of the MESC and the lower court, we reverse and remand.

FACTS
¶ 3. Brandon was employed as a nurse at Baptist Hospital. She was also, at the time of her discharge, running for public office. The hospital administrator received an anonymous letter stating that Brandon had engaged in "campaigning or soliciting for voters while on duty at the hospital...." Upon receipt of this letter, Brandon's department head called her in to inquire about this accusation. Brandon denied campaigning or soliciting voters while on duty at the hospital. This meeting was very brief and nothing was recorded in her personnel records regarding the same.
¶ 4. Another anonymous letter was submitted to the hospital, once again accusing Brandon of campaigning and soliciting on the job. Again, she was asked by her department head about the accusation, and she once again replied that she had not engaged in such activity. At this time, she was presented with a copy of the absentee ballot application of Mary Lee, one of the patients in her care at Baptist, which contained Brandon's signature as a witness. Brandon did not deny that this was her signature. She stated that she was unaware that what she had done qualified as "campaigning" or "solicitation" and this is why she did not inform her department head of this event the first time he questioned her about soliciting the hospital patients. She also stated that she was off-duty at the time of the incident.
¶ 5. Baptist Hospital, on the other hand, claims that Brandon intentionally circumvented the "on-duty" requirement of the rule in order that she would not suffer the consequences of her actions. In addition, they allege that Brandon's silence when asked about the incident indicated that she knew that her conduct violated the hospital policy. The position of the hospital is that, although Brandon may have committed these acts while technically off-duty, she strategically planned to avoid the policy of no solicitation.
¶ 6. After this second meeting with her department head, Brandon was immediately suspended and subsequently discharged because of this incident which the hospital claims was in direct violation of their written employment policy. The policy states that there shall be no solicitation of patients or other employees by any hospital employee while on duty. She was denied unemployment benefits because of her alleged misconduct.

STANDARD OF REVIEW
¶ 7. The standard of review to be used when reviewing a trial court decision either affirming or denying an administrative agency's findings and decisions is an abuse of discretion standard.
¶ 8. Our standard for reviewing the findings and decisions of an administrative agency such as the MESC is found in Miss.Code Ann. § 71-5-531 (Supp.1998). "In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence *344 and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." Id.
¶ 9. Apart from the statute, this Court has spoken to the standard of review of MESC proceedings: "The denial of benefits may be disturbed only if (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope of power granted to the agency, or (4) in violation of the employee's constitutional rights." Mississippi Employment Sec. Comm'n v. Noel, 712 So.2d 728, 730 (Miss.Ct.App.1998)(citing Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss.1993)). The MESC's decision is rebuttably presumed to be correct. Id.
¶ 10. Under Mississippi's Unemployment Compensation Law, a person is disqualified from receiving benefits if he is discharged from employment for misconduct connected with his work. Miss.Code Ann. § 71-5-513(A)(1)(b) (Rev.1995). The burden of proving misconduct by clear and convincing evidence rests with the employer. Sprouse v. Mississippi Employment Sec. Comm'n, 639 So.2d 901 (Miss.1994).

LEGAL ANALYSIS
¶ 11. As stated above, whether this Court may reverse the decision of the MESC and the lower court turns on whether the decision that Brandon committed misconduct as it applies to unemployment compensation is supported by substantial evidence. "Misconduct" is defined as "willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of the standards of behavior which the employer has the right to expect from his employees...." Wheeler v. Arriola, 408 So.2d 1381 (Miss.1982).
¶ 12. The rule at issue in this case is Baptist Hospital's policy prohibiting solicitation by employees of patients or other employees while on duty. The wording of the policy as found in Baptist Hospital's Policy and Procedures Manual regarding solicitation is as follows:
I. Distribution and solicitation of any kind are not permitted on the hospital premises, either by hospital employees, or visitors.
II. The only exceptions to the policy apply in cases where the distribution or solicitation is for purposes protected by federal labor law (organizational activity on behalf of labor organizations) or for activities approved by the Baptist Memorial Health Care System Inc.; i.e., United Way.
III. Employees on non-working time may distribute literature in non-working areas to other non-working employees for such purposes described in Section II.
IV. Distribution (as described in II) is allowed in the following non-working areas:
A. Exterior areas, exception admissions entrances and emergency room entrances.
B. Employee parking areas.
C. All enclosed employee locker rooms, all employee restrooms, restrooms, all employee's lounges, and conference rooms which are made available to employees during their non-working time.
V. Employees on non-working time may solicit other non-working employees for such purposes described in Section II of this policy.
VI. Solicitation (as described in II) is permitted in the following areas:
A. All areas in which distribution is permitted.
B. Corridors, laboratories, offices and other work areas to or through which patients are not transported.
C. The cafeteria.

*345 VII. Violation of this policy may result in disciplinary action up to and including discharge.
¶ 13. For purposes of clarification, this Court feels that it is important to define the concept of solicitation as it pertains to the law. To solicit is to "appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving ..."; "To awake or incite to action by acts or conduct intended to and calculated to incite the act of giving." BLACK'S LAW DICTIONARY 1392 (6th ed.1990). When looking at Brandon's conduct in such a light, we cannot say that she is in violation of the solicitation rules found in Baptist's policy manual. The facts, as accepted by MESC and the lower court, tell us that Brandon was asked by her patient for assistance in obtaining an application for absentee ballot. We can find no facts in the record which present any evidence that Brandon intended or calculated to induce the patient into asking her for the application in order to benefit herself. Furthermore, the application collected for the patient was just thatan application. We fail to see how obtaining this application for an absentee ballot for a patient constitutes solicitation as it is legally defined. Had Brandon helped a patient vote on the actual absentee ballot, thereby inducing the patient to vote for her, we would have a different case here. However, the record indicates, and we find nothing to the contrary, that upon the submission of this application to its proper destination, the actual absentee ballot would be sent directly to the home of the patient for her to vote in complete privacy.
¶ 14. The affidavit of the patient, Mrs. Mary Lee, submitted into evidence in the trial stated that Mrs. Lee overheard a conversation regarding Brandon's candidacy. There was no finding by the MESC or the trial court that would tend to show that Brandon thereafter solicited a vote from Mrs. Lee. In fact, Mrs. Lee stated that she would like to be able to vote and that Brandon brought her the application so that she could "vote at home."
¶ 15. The purpose of an absentee ballot is to aid those people who are eligible to vote, but cannot be present at the voting box on the election day specified. Miss. Code Ann. § 23-15-627 (Rev.1990). The purpose of an application for absentee ballot is simply to apply for an opportunity to receive an actual absentee ballot upon the determination by the registrar and Secretary of State that the person requesting such application is, in fact, a qualified voter. Miss.Code Ann. § 23-15-627. A person who is temporarily or permanently disabled and cannot be available at the voting box on election day, but nevertheless wishes to cast a vote in the election, is not required to have the application for absentee ballot notarized by an official notary public. Miss.Code Ann. § 23-15-627. Rather, in cases such as these, a person requesting an absentee ballot by way of application may sign the application and have any person eighteen years of age or older witness and sign the application. Miss.Code Ann. § 23-15-627.
¶ 16. Once again, we fail to see any behavior on the part of Brandon that would constitute solicitation, either express or implied. We are not convinced that Baptist Hospital has met its burden of proof to show by "substantial, clear, and convincing" evidence that Brandon's conduct here warrants a denial of benefits. Foster v. Mississippi Employment Sec. Comm'n, 632 So.2d 926, 928 (Miss.1994); Shannon Eng. & Const., Inc. v. Mississippi Employment Sec. Comm'n, 549 So.2d 446, 450 (Miss.1989). Here, we cannot clearly say that Brandon's actions were more than an error in judgment. She stated that she was not aware that what she was doing amounted to a solicitation. We are not insinuating that Brandon was free and clear of any fault here in not verifying with her employer that her conduct was proper according to some hospital policy or in speaking casually about her candidacy in the presence of a patient. *346 However, we are not convinced that her actions constituted an actual solicitation as we are given no clear, substantial evidence on which to base this theory. A mere error in judgment will not suffice as misconduct for purposes of denial of compensation. Allen v. Mississippi Employment Sec. Comm'n, 639 So.2d 904 (Miss.1994); 26 A.L.R.3d 1358. In accordance with such, it is our opinion that an error in judgment, i.e., Brandon making a decision to handle this situation without consulting the policy, or her employer in the event of ambiguities in the policy, may warrant discipline, even discharge. However, in Brandon's case, we cannot say that her conduct constituted willful, wanton, intentional or deliberate disregard for the best interest of her employer. Wheeler, 408 So.2d at 1383. It would not stand to reason for this Court to say that simply because she knew of the rule, she must have understood the meaning or extent of the rule. The MESC and the lower court accepted, and Baptist Memorial Hospital stipulated to the fact, that there was no evidence of Brandon's handing out campaign literature or asking patients for votes while on the job, actions which we find would be more apt to clearly indicate willful and wanton disregard of her employer's policy on its face.
¶ 17. The fact that Brandon was off-duty at the time she brought the application for absentee ballot to her patient has also been accepted as true by the MESC and the lower court. It is our opinion that Baptist offers no conclusive evidence that Brandon's conduct was with evil intent, as they suggest. Rather, we find that Baptist's responses to Brandon's argument that she was off-duty at the time of the incident are riddled with speculative possibilities as to what was inside Brandon's head, i.e., plotting to engage in misconduct hoping that she would not be discovered. We cannot find, however, any evidence that would clearly support these theories. We fail to see that Brandon's denial to her supervisor that she engaged in solicitation against employee policy was anything but a misunderstanding on her part as to what was considered by the hospital to be solicitation. While Brandon could have exercised the option to clarify this meaning with her employer, we cannot say that the fact that she did not do so points toward substantial evidence that she engaged in this conduct diabolically.
¶ 18. We cannot find that there was overwhelming or even substantial evidence to indicate clearly that Brandon's actions contained the elements required for misconduct as set out by Wheeler, 408 So.2d at 1383. Therefore, it is our opinion that the decision of the MESC and the judgment of the trial court should be reversed and Brandon should be entitled to unemployment benefits. As such, Brandon's argument alleging a violation of her constitutional rights need not be addressed by this Court.
¶ 19. Therefore, this matter is remanded to the Commission for a determination and order of benefits as appropriate to Brandon.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY, OF DENIAL OF UNEMPLOYMENT BENEFITS TO BARBARA BRANDON IS REVERSED AND REMANDED TO SAID COMMISSION FOR A DETERMINATION AND ORDER OF BENEFITS AS APPROPRIATE TO APPELLANT.
KING, P.J., IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J. AND SOUTHWICK, P.J., NOT PARTICIPATING.