847 So.2d 833 (2003)
SOUTHWOOD DOOR COMPANY
v.
Raymond BURTON.
No. 2002-CC-00893-SCT.
Supreme Court of Mississippi.
June 5, 2003.
*835 Timothy W. Lindsay, Flowood, attorney for appellant.
Steven D. Slade, Meridian, attorney for appellee.
Before McRAE, P.J., WALLER and GRAVES, JJ.
WALLER, Justice, for the Court.
¶ 1. Raymond Burton, a truck driver, was terminated by his employer, Southwood Door Company, after testing positive on a random drug test. Burton thereafter sought unemployment compensation benefits which were denied by the Board of Review of the Mississippi Employment Security Commission (MESC). Burton appealed the denial of benefits to the Lauderdale County Circuit Court which reversed the denial and awarded Burton benefits. Southwood appeals the judgment of the circuit court. Finding the circuit court's resolution ultimately correct, we affirm the award of benefits.

FACTS AND PROCEDURAL HISTORY
¶ 2. Southwood Door Company manufactures and distributes doors nationwide. Since it employs over-the-road drivers, Southwood was subject to federal Department of Transportation regulations governing the drug and alcohol testing of its drivers. 49 U.S.C. § 31306 (2003); 49 C.F.R. Part 40 (1999). On July 6, 1999, Southwood employee Raymond Burton was randomly selected for drug testing and reported for testing on July 9, 1999. See 49 U.S.C. § 31306(b) (allowing preemployment, reasonable suspicion, random, and post-accident testing of operators of commercial motor vehicles). Burton underwent a "Breathalyzer" alcohol test and urine drug test at the MEA Drug Testing Consortium's satellite collection facility in Quitman, Mississippi.
¶ 3. Lori Hale, a representative of MEA, notified Burton by telephone on July 12, 1999, that he had tested positive for marijuana. Burton was subsequently terminated on July 13, 1999, pursuant to Southwood's policy which provides for termination in the event of any positive drug or alcohol test.
¶ 4. Burton underwent another urine test at his own expense on July 14, 1999, which yielded a negative result for marijuana. Pursuant to 49 C.F.R. § 382.605, Burton was referred to Patricia Sandusky, Ph.D., a Substance Abuse Professional. Dr. Sandusky concluded that Burton did not have a substance abuse problem and believed Burton's assertions that the methods employed in the collection of his specimen were faulty. She further recommended that Burton undergo a hair follicle drug test which would reveal drug use within the last 90 days. This test yielded a negative result as well.
¶ 5. Southwood denied Burton's request that he be reinstated to his position, and on September 12, 1999, he applied with the MESC for unemployment compensation benefits. The claims examiner found that Southwood did not show that it had terminated Burton for misconduct and deemed him eligible for benefits.
¶ 6. Southwood appealed, and a hearing was conducted before Appeals Referee Timothy Rush on November 18, 1999. The referee reversed the claims examiner and disqualified Burton from benefits, stating:

*836 The Referee is of the opinion that the claimant was discharged for violation of the company's drug policy after he tested positive for use of marijuana. The Referee is of the opinion that the claimant's actions constituted misconduct connected with the work as that term is used in the Unemployment Insurance Law. The decision of the Claims Examiner will be cancelled.
¶ 7. As stated in the ruling and pursuant to Miss.Code Ann. § 71-5-519 (2000), the decision of the referee would become final unless an appeal was filed within fourteen days after the notification or mailing of the decision. The Board received Burton's notice of appeal on December 4, 1999, and dismissed the appeal as untimely.
¶ 8. Burton appealed the dismissal of his appeal to the Lauderdale County Circuit Court. According to the MESC, Burton's notice of appeal was received one day late at the wrong address. However, the court found good cause to remand Burton's case for a review on the merits. This decision was never appealed.
¶ 9. On remand, the Board of Review affirmed the decision of the Appeal Referee, stating:
The Board of Review agrees with the Findings of Fact as stated by the Appeal Referee in his decision of November 19, 1999. The facts also show that subsequent to the random drug test taken by the claimant on July 19, 1999, the claimant had other drug tests on his behalf, which test[s] proved to be negative.
The Board agrees with the Opinion of the Referee that the claimant was discharged for violation of the company's drug policy after he tested positive for use of marijuana. The test taken on July 19, 1999[,] was positive for marijuana and such was a violation of the company policy, which was known and understood by the claimant. The result of any subsequent test taken by the claimant does not alter the fact that the test on July 19, 1999[,] was positive. The decision of the Appeals Referee, therefore, will be affirmed.
(emphasis in original).
¶ 10. Burton again appealed to the Lauderdale County Circuit Court. Faced with the question of whether Burton's positive test result could be considered "misconduct" under Mississippi law, the court analyzed the Drug and Alcohol Testing of Employees Law, Miss.Code Ann. §§ 71-7-1 to -33 (2000), as it applied to employment security cases. The court found that since a confirmation test on Burton's specimen had not been conducted, Southwood failed to prove misconduct by clear and convincing evidence. The court also refused to address the timeliness issue, holding that the failure to appeal the circuit court's prior decision to remand barred subsequent review. The decision of the Board of Review was reversed.
¶ 11. Southwood appeals and raises three assignments of error, arguing the circuit court erred in finding good cause to relax Burton's time to appeal, the circuit court applied an improper legal standard to determine that Burton had committed misconduct, and the circuit court erred in applying Mississippi's drug testing statutes to Southwood.

STANDARD OF REVIEW
¶ 12. Miss.Code Ann. § 71-5-531 (2000) provides the appropriate standard of review in cases reviewing decisions of the Board of Review: "In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." See also Johnson v. *837 Miss. Employment Sec. Comm'n, 761 So.2d 861, 863 (Miss.2000); Coahoma County v. Miss. Employment Sec. Comm'n, 761 So.2d 846, 848-49 (Miss. 2000); Miss. Employment Sec. Comm'n v. Lee, 580 So.2d 1227, 1229 (Miss.1991); Wheeler v. Arriola, 408 So.2d 1381, 1384 (Miss.1982); Brandon v. Miss. Employment Sec. Comm'n, 768 So.2d 341, 344 (Miss.Ct.App.2000).

DISCUSSION

I. WHETHER THE CIRCUIT COURT ERRED IN REVERSING THE BOARD OF REVIEW'S DISMISSAL OF BURTON'S APPEAL AS UNTIMELY.
¶ 13. The Appeals Referee entered his decision on November 19, 1999, and indicated that a request for review had to be filed within fourteen days and addressed to Mississippi Employment Security Commission, Board of Review, P.O. Box 1699, Jackson, MS XXXXX-XXXX. Burton was also mailed a Notice of Overpayment of Benefits dated November 29, 1999, which indicated that an appeal had to be filed within fourteen days and addressed to Mississippi Employment Security Commission, P.O. Box 23088, Jackson, MS XXXXX-XXXX The MESC received Burton's request for review dated December 2, 1999, addressed to Mississippi Employment Security Commission, Board of Review, P.O. Box 23088, Jackson, MS XXXXX-XXXX, on December 4, 1999, apparently one day late and at the wrong address.
¶ 14. The Board of Review dismissed Burton's appeal as untimely. Burton appealed to the Lauderdale County Circuit Court which reversed the Board of Review's dismissal as untimely and remanded for a decision on the merits. According to Burton, he mailed his request for review to both P.O. Box 1699 and P.O. Box 23088. However, there is no record of the MESC ever receiving or acknowledging receipt of the P.O. Box 1699 request for review. Southwood never appealed the circuit court's decision to reverse and remand Burton's case back to the Board of Review.
¶ 15. Southwood argues that the circuit court's decision to remand Burton's claim was interlocutory and thus not appealable and cites in support our decision in Wilson v. Miss. Employment Security Comm'n, 643 So.2d 538 (Miss.1994). In Wilson, the Lauderdale County Circuit Court remanded a case back to the MESC after finding the record insufficient to support the employer's discharge of its employee. Id. at 539. We dismissed the appeal on the grounds that it was interlocutory. Id. at 540. The circuit court in Wilson did not explicitly affirm or reverse the decision of the MESC. Rather, it reversed and remanded for more information.
¶ 16. In J.R. Logging v. Halford, 765 So.2d 580 (Miss.Ct.App.2000), a workers' compensation case, Presiding Judge Southwick of the Court of Appeals, in a concurring opinion, aptly explained the fine distinction to be drawn between an appeal from a final order and an interlocutory appeal in administrative agency cases. The employee, Halford, was injured and entered into a settlement with his employer. 765 So.2d at 582. Halford later attempted to reopen his claim alleging a mistake of fact, but the administrative law judge denied the petition. Id. After the commission affirmed, Halford appealed to circuit court which reversed, finding the commission's finding was clearly erroneous. Id. The Court of Appeals subsequently reversed the circuit court and affirmed the denial of Halford's petition to reopen his claim. Id.
¶ 17. Presiding Judge Southwick's separate opinion addressed the procedural aspects of the case. His analysis began with *838 our 1991 opinion in Bickham v. Dep't of Mental Health, 592 So.2d 96 (Miss.1991), a consolidation of two workers' compensation cases in which the commission sent one case to an administrative law judge to determine whether an employee could reopen her claim and another case to an administrative law judge to hear a claim which had been reopened. He noted both cases had been appealed prior to any action being taken by the ALJ or commission and that we found both appeals to be improper interlocutory appeals because no final decision had been entered. 592 So.2d at 586.
¶ 18. Wilson was likewise analyzed, and Presiding Judge Southwick noted that we did not determine that the MESC had erred but only that the employer did not produce evidence to support the employee's discharge. 765 So.2d at 587. He further interpreted our holding in Wilson:
I conclude that the reason the circuit court decision in Wilson was not final was because it neither accepted nor rejected the MESC action. Instead, it asked for more information. Ultimately the circuit court might approve what the MESC decided as to benefits. Had the Wilson circuit court instead decided that the MESC definitely erred and sent the case back for further proceedings to determine the proper benefits, I believe that would be a final judgment subject to further review at the Supreme Court. To me that is the better view of Wilson, else no reversal and remand by an appellate court (which is the status of the circuit court in reviewing those agency decisions) would be a final judgment.
Id. (emphasis added). We agree with this interpretation.
¶ 19. Here, the original circuit court reverse and remand was not concerned with the merits of Burton's claim; it was reversed on a procedural issue, namely, the timeliness of an appeal and remanded for a decision on the merits. There is not, as there was in Wilson, a circuit court determination that the record was insufficient to decide whether the employer had produced enough evidence to support the discharge of its employee. See 643 So.2d at 539. The MESC's decision to bar review of Burton's appeal on timeliness grounds was indicative of the finality of the agency's decision, and the circuit court held that it was error to do so. The circuit court's reverse and remand on the issue of timeliness was therefore not interlocutory in nature, and Southwood should have appealed that decision.

II. WHETHER THE CIRCUIT COURT APPLIED AN IMPROPER LEGAL STANDARD TO DETERMINE THAT BURTON HAD NOT COMMITTED MISCONDUCT FOR PURPOSES OF THE MISSISSIPPI EMPLOYMENT SECURITY LAW.
¶ 20. Since the drug testing of employees like Burton is governed by federal regulations, we will discuss the federal drug testing scheme in general, Mississippi law regarding "misconduct" as a disqualification to unemployment compensation benefits, and the application of those two concepts to the instant case.

A. Federal Drug Testing in General
¶ 21. An employee who is, for example, randomly selected for testing reports to a Department of Transportation-compliant collection site, 49 C.F.R. § 40.3, and provides a urine specimen. 49 C.F.R. § 40.25.[1] After the employee produces a *839 specimen, the collector takes it and, while in the employee's presence, pours at least 30 mL from the collection container to another bottle which will be the primary specimen and pours at least 15 mL into another bottle which will be the split specimen. 49 C.F.R. § 40.25(f)(10)(ii)(B)(1).
¶ 22. Both specimens are then shipped to a DOT-compliant drug testing laboratory which initially tests the primary specimen for marijuana, cocaine, amphetamines, opiates, and phensyblidine (PCP). 49 C.F.R. § 40.29. If the initial test returns a negative result, the test is complete; however, if the initial test returns positive, a confirmation test is conducted. Id.[2]
¶ 23. The results of the testing of the primary specimen are reported to the Medical Review Officer (MRO), a licensed physician, 49 C.F.R. § 40.3, whose responsibility, among other things, is to "review and interpret confirmed positive test results...." 49 C.F.R. § 40.33(b)(3). If the MRO receives a confirmed positive result, he must contact the employee directly prior to verification to determine whether the employee wants to discuss the result and inform the employee that the test will be verified as positive if he declines to do so. 49 C.F.R. § 40.33(c)(2). If the confirmed positive result is for marijuana, cocaine, amphetamines, and/or PCP, the MRO must allow the employee "to present information concerning a legitimate explanation for the confirmed positive test." 49 C.F.R. § 40.33(c)(6). Also, the MRO "shall notify each employee who has a confirmed positive test that the employee has 72 hours in which to request a test of the split specimen." 49 C.F.R. § 40.33(f)(1). In the event the employee does in fact request testing of the split specimen, the split specimen is sent to a second laboratory for testing. Id.
¶ 24. For federal purposes, the practical effect of a confirmed test result is that the employee is prohibited from performing safety-sensitive functions. An employee is not eligible to drive again until he completes the Return-to-Duty Process with a Substance Abuse Professional (SAP). 49 C.F.R. § 382.605. The SAP's duties are, among other things, to make a clinical assessment and evaluation of the employee, refer the employee to an education or treatment program, and conduct a follow-up evaluation to determine the employee's participation in treatment programs and compliance with recommendations. Id.
¶ 25. In the instant case, Burton received notification from Lori Hale that he tested positive for marijuana. The Results of Controlled Substance Test form states that Burton's MRO was Dr. Chris Schwartz. There is no indication that the MRO contacted Burton directly or informed Burton that he had 72 hours to request testing of his split specimen as required by 49 C.F.R. § 40.33(c)(2).[3]

*840 B. Disqualifying "Misconduct" in Mississippi

¶ 26. Miss.Code Ann. § 71-5-513 A(1)(b) (Supp.2002) provides that an employee shall be disqualified from receiving benefits:
For the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the commission, and for each week thereafter until he has earned remuneration for personal services performed for an employer, as in this chapter defined, equal to not less than eight (8) times his weekly benefit amount, as determined in each case.
(emphasis added). We defined "misconduct" in Wheeler v. Arriola, 408 So.2d 1381 (Miss.1982). Relying on Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941), we noted:
The [Boynton] Court held that the meaning of the term "misconduct," as used in the unemployment compensation statute, was conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregards of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.
Wheeler, 408 So.2d at 1383. This definition has been applied by this Court and the Court of Appeals since 1982 in cases finding sufficient evidence of misconduct.[4]See Halbert v. City of Columbus, 722 So.2d 522 (Miss.1998) (holding that employee's failure to submit to random drug test within required three-hour time frame of being notified constituted misconduct). See also Young v. Miss. Employment Sec. Comm'n, 754 So.2d 464 (Miss.1999) (affirming denial of benefits and finding that employee's failure to relinquish identification badge upon suspension constituted misconduct); Captain v. Miss. Employment Sec. Comm'n, 817 So.2d 634 (Miss.Ct.App.2002) (affirming denial of unemployment compensation to employee terminated for violating company e-mail policy); Reeves v. Miss. Employment Sec. Comm'n, 806 So.2d 1178 (Miss.Ct.App.2002) (affirming denial of benefits to employee terminated for failing to clean parts as instructed); Miss. Employment Sec. Comm'n v. Berry, *841 811 So.2d 298 (Miss.Ct.App.2001) (reversing circuit court reversal of Board of Review denial of benefits to employees of catfish processing plant who went on strike in violation of collective bargaining agreement); Miss. Employment Sec. Comm'n v. Douglas, 758 So.2d 1059 (Miss. Ct.App.2000) (reversing circuit court reversal of Board of Review denial of benefits to employee terminated for manufacturing fake identification cards away from work when some of the counterfeit cards were found in personnel files of other employees). Also, we and the Court of Appeals have affirmed awards of benefits or reversed denials of benefits for lack of substantial evidence of misconduct. See Coahoma County v. Miss. Employment Sec. Comm'n, 761 So.2d 846 (Miss.2000) (affirming award of benefits to employee found not to be engaged in misconduct when failing to report coworker for covering up surveillance cameras at Coahoma County jail); Huckabee v. Miss. Employment Sec. Comm'n, 735 So.2d 390 (Miss. 1999) (on motion for rehearing) (reversing denial of benefits because there was lack of substantial evidence that employee voluntarily quit job as cashier without good cause); Trading Post, Inc. v. Nunnery, 731 So.2d 1198 (Miss.1999) (affirming award of benefits to employee on basis that absence from work did not constitute misconduct); Brandon v. Miss. Employment Sec. Comm'n, 768 So.2d 341 (Miss. Ct.App.2000) (finding insufficient evidence to justify denial of benefits to employee nurse accused of violating hospital policy by obtaining application for absentee ballot for patient); Miss. Employment Sec. Comm'n v. Jones, 755 So.2d 1259 (Miss.Ct. App.2000) (affirming circuit court reversal of denial of benefits to employee terminated for shortage in cash drawer on three occasions on basis that such violations not misconduct); Little v. Miss. Employment Sec. Comm'n, 754 So.2d 1258 (Miss.Ct. App.1999) (finding no substantial evidence to justify circuit court's affirming of Board of Review denial of benefits to employee accused of wrongfully taking desserts from refrigerator of employer Kentucky Fried Chicken); Routt v. Miss. Employment Sec. Comm'n, 753 So.2d 486 (Miss.Ct.App. 1999) (finding employee maid's refusal to scrub floors because of physical ailment did not amount to misconduct). The burden of proving this disqualifying misconduct by clear and convincing evidence rests with the employer. Gore v. Miss. Employment Sec. Comm'n, 592 So.2d 1008, 1010 (Miss.1992).

C. The Instant Case
¶ 27. Southwood's termination of Burton on July 13, 1999, just one day after he was notified of his positive result, is pertinent for our purposes only to the extent it bears on Burton's eligibility for benefits. Mississippi is an employment-at-will state such that employees can be terminated for good reason, bad reason, or no reason. See Slatery v. Northeast Miss. Contract Procurement, Inc., 747 So.2d 257, 259 (Miss.1999); Levens v. Campbell, 733 So.2d 753, 760 (Miss.1999); Bobbitt v. Orchard, Ltd., 603 So.2d 356, 360-61 (Miss. 1992).
¶ 28. Southwood has failed to carry its burden of producing clear and convincing evidence of misconduct by Burton. The only evidence presented to the Appeals Referee was the testing documentation and testimony of Al Ladner, Southwood's Purchasing Inventory and Transportation Supervisor, who was quite knowledgeable of the federal testing scheme but possessed very little personal knowledge of the circumstances surrounding Burton's testing. The extent of Ladner's knowledge of Burton's testing was his being informed by Lori Hale of the positive test result.
*842 ¶ 29. The federal scheme only endeavors to provide commercial motor vehicle safety. See 49 U.S.C. § 31306. It is completely silent on termination, reinstatement and unemployment compensation matters. See 53 Fed.Reg. 47134, 47148 (Nov. 21, 1998) (stating that "[i]ssues such as termination, reassignment, hiring of temporary drivers to fill a position, or policies regarding a driver's absence from a position are, as the FHWA believes, issues that are appropriately the subject of labor-management negotiations and are not issues to be addressed in this rulemaking action"). Since there is no federal law addressing such, eligibility for unemployment benefits is governed by state law.
¶ 30. Southwood is thus correct that the federal drug testing regulations preempt Mississippi's drug testing statute, Miss.Code Ann. §§ 77-7-1 to 71-7-33 (Rev.2000 & Supp.2002), and the circuit court erred in applying the state scheme. See Miss.Code Ann. § 71-7-29 ("This chapter shall not apply to any employer who is subject to federal law or federal regulations governing the administering of drug and alcohol tests to any of its employees or applicants for employment.").
¶ 31. Miss.Code Ann. § 71-7-13(3) in the drug testing chapter states, "An employee discharged on the basis of a confirmed positive drug and alcohol test in accordance with this chapter shall be considered to have been discharged for willful misconduct." This would certainly satisfy the Miss.Code Ann. § 71-5-513 A(1)(b) misconduct disqualification. However, Miss.Code Ann. § 71-7-13 does not apply to employees like Burton who are subject to federal testing regulations. This situation thus begs the question of what amounts to Section 71-5-513 A(1)(b) disqualifying misconduct when there is no applicable state statute establishing as much. We hold that if an employer wishes to disqualify an employee for unemployment benefits because of a positive result on a federally-regulated drug test, the employer must at least produce clear and convincing evidence that the testing comported fully with the federal regulations. Applying that standard to this record, we conclude that the evidence presented does not clearly and convincingly establish that Burton was informed of his right to request within 72 hours the testing of his split specimen. If an employer wishes to disqualify an employee for failing a federally-regulated drug test in which a split specimen was taken, it must produce clear and convincing evidence that the split specimen was reconfirmed positive or that the employee declined to discuss the result with the MRO. See 49 C.F.R. § 40.33(c). Doing so will satisfy the "misconduct" requirement of Miss.Code Ann. § 71-5-513 A(1)(b).[5]

III. WHETHER THE CIRCUIT COURT ERRED AS A MATTER OF LAW IN APPLYING MISSISSIPPI DRUG TESTING LAWS TO SOUTHWOOD.
¶ 32. We agree with Southwood that the circuit court erred in applying Mississippi's statutes governing the administration of drug tests. However, this error was harmless since we arrive at the same conclusion by applying federal law.

CONCLUSION
¶ 33. We hold that in order to establish a DOT-regulated employee's ineligibility *843 for state unemployment benefits because of a positive drug or alcohol test result, there must be clear and convincing evidence that the testing was conducted according to the federal guidelines. When, as in this case, no evidence was produced that Burton was informed of his right to request testing of the split specimen within 72 hours, misconduct for purposes of unemployment benefits was not established. As such, the Lauderdale County Circuit Court correctly reversed the Board of Review's decision denying Raymond Burton unemployment benefits. The circuit court's judgment is affirmed.
¶ 34. AFFIRMED.
PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.
NOTES
[1] This is a broad, very general overview of the testing process, and the citations to the Code of Federal Regulations are to the 1999 regulations. The regulations have since been amended, converted to question-and-answer format, and renumbered.
[2] Specifically, Section 40.87(b) states, "On an initial drug test, you must report a result below the cutoff concentration as negative. If the result is at or above the cutoff concentration, you must conduct a confirmation test." (emphasis added). Burton apparently misapprehends the federal testing process by arguing repeatedly that he was terminated without there ever having been a confirmation test. Under the federal regulations, an employee is not notified as having a positive test result until and unless a confirmation test has been conducted.
[3] Section 40.33(c) provides the following in pertinent part:

(c) Positive test result.
(1) Prior to making a final decision to verify a positive test result for an individual, the MRO shall give the individual an opportunity to discuss the test result with him or her.
(2) The MRO shall contact the individual directly, on a confidential basis, to determine whether the employee wishes to discuss the test result. A staff person under the MRO's supervision may make the initial contact, and a medically licensed or certified staff person may gather information from the employee. Except as provided in paragraph (c)(5) of this section, the MRO shall talk directly with the employee before verifying a test as positive.
(emphasis added).
[4] The MESC manual also incorporates the Wheeler rationale. "An employee shall not be found guilty of misconduct for the violation of a rule unless: (1) the employee knew or should have known of the rule; (2) the rule was lawful and reasonably related to the job environment and job performance; and (3) the rule is fairly and consistently enforced." MESC Administrative Manual, Part V, para. 1720 (emphasis added).
[5] Southwood correctly argues in its brief that it is not subject to the state drug testing statute because it did not affirmatively elect to be covered. See Miss.Code Ann. § 71-7-27. However, being subject to federal regulation and not state statute does not affect our holding establishing what is required to prove misconduct for disqualification for benefits.