# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00611-COA

**CLARKSDALE MUNICIPAL SCHOOL**                     **APPELLANT**
**DISTRICT BOARD OF TRUSTEES**

**v.**

**SHARRON MONTGOMERY**                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/22/2024 |
| TRIAL JUDGE: | HON. WATOSA MARSHALL SANDERS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | KASHONDA LEKESHA DAY |
| | MARY CLARK JOYNER |
| ATTORNEYS FOR APPELLEE: | JOSEPH LEE ADAMS |
| | KRISTINE LYNN BISHOP CALLAHAN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND RENDERED - 11/18/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. After a school district employee's contract was not renewed, she sought review from the school board. The school board determined a hearing was not necessary because she failed to provide the district with the required materials and upheld the non-renewal. She appealed to the chancery court, which reversed and remanded, finding the board had failed to follow its own rules. Since the educator did not comply with the statute's requirements, a hearing was not necessary, and we reverse the chancery court's decision and render in favor of the school board.

## PROCEDURAL HISTORY

¶2.    Sharron Montgomery was employed as a "Parent and Family Engagement Coordinator" with the Clarksdale Municipal School District. In early 2023, she was informed by letter that her employment contract would not be renewed for the 2023-2024 school year, as her position was "being eliminated." Montgomery was subsequently told in a follow-up letter that the reason for her non-renewal was that her

> duties [will be] repurposed to school-level Parent Liaison positions throughout the District. Due to the District's chronic absenteeism rate of 52% and the increase of schools identified as those in improvement by MDE, the District has determined it necessary to have more onsite parental support in place.

¶3.    Montgomery requested a due process hearing before the school district's Board of Trustees to challenge the non-renewal. At the meeting before the Board, the attorney representing the school district argued that "the District has not received the necessary information from Ms. Montgomery or her attorney" "in compliance with [the] law before the five-day period before this particular hearing." He then stated, "[T]he District is asking for . . . the Board to do two things: One, make a factual finding that Ms. Montgomery failed to submit the required response to the District pursuant to [state law]; and, secondly, to approve the recommendation of nonreemployment, which the Board is allowed to do pursuant to that particular same provision of the statute." He further asserted the statute "says if an employee fails to provide this information, the recommendation of nonreemployment of the superintendent, of course, in this particular position, shall be final without the necessity of a hearing."

¶4.    After deliberation, the Board stated on the record: "it is the understanding of this Board" that the law requires "that we . . . recognize that we do not have or did not receive

2

any evidence in support of the response intended to be presented here today, nor any list of witnesses, nor that we received any other further documentation listed in that." The Board concluded, "As a result, we are obligated and understand that we are obligated by law to uphold the nonrenewal that has been issued to Ms. Montgomery." Notably, Montgomery's attorney then had an opportunity to poll the Board members regarding their votes, and every member announced that he or she voted to affirm the nonrenewal.

¶5.     The day after the Board meeting, the school district's attorney sent a letter to Montgomery's attorney stating:

> As you are aware, on Tuesday, May 30, 2023, the Board . . . conducted a due process hearing on the non-renewal of Sharron Montgomery. After hearing oral arguments and posing questions, the Board deliberated and voted unanimously to uphold the non-renewal decision . . . . The Board found, concluded, and announced that Ms. Montgomery failed to timely submit a response regarding the Superintendent's non-renewal . . . .

¶6.     Montgomery subsequently filed a petition with the chancery court "to appeal the Board's affirmance of the decision not to renew" her employment contract.  Her core argument was that the Board failed to notify her of its decision "with written and signed Board minutes." In her view, this failure meant the Board did not properly ratify the non-renewal of her contract. She reasoned, "A public Board can only act or speak through its minutes," and since she never received an official decision from the Board, the decision was not finalized, so "[a]t a minimum, Montgomery's case must be remanded to the Board for a full hearing on the merits."

¶7.     The chancery court agreed with Montgomery's approach, finding that her "failure to adhere to the 5-day rule amounts to harmless error since she did not plan to present any

witnesses other than herself and because the Board had already been put on notice that Montgomery would be present at the hearing, especially since she was the one that requested it." The court further determined that the "five day rule" was meant to prevent trial by ambush and because "the school already had all of Ms. Montgomery's employment records[,] and since she did not have any witnesses to testify, there would not have been any significant amount of testimony which the School Board and/or its attorney were not already privy to."

¶8. Additionally, the court found that the Board erred by failing to reduce in writing its decision dismissing Montgomery's appeal by spreading the decision over the Board's minutes, and by failing to send the decision to her within 10 days per state law. The chancery court concluded that "[a] written copy of the Board minutes should have been sent to Ms. Montgomery just as she should have submitted her five (5) day documentation."

¶9. The court ruled that "this case should be remanded back to the School Board for a full hearing on the merits" since "[t]he School Board cannot simply pick and choose which statutes it will adhere to." In the end, the relief granted was that which Montgomery had requested—a remand "for a full hearing on the merits."

¶10. The Board timely appealed, and the case was assigned to us for review.

## DISCUSSION

I. **The judgment rendered by the chancery court on appeal was a final and reviewable order per statute.**

¶11. Our threshold issue is whether there is a final judgment upon which an appeal may

4

rest.[1] "Regardless of whether the parties raise jurisdiction, the Court is required to note its own lack of jurisdiction[.]" *Smith v. Parkerson Lumber Inc.*, 890 So. 2d 832, 834 (¶12) (Miss. 2003). Appellate courts "must address this question on our own initiative." *M.W.F. v. D.D.F.*, 926 So. 2d 897, 899 (¶4) (Miss. 2006).

¶12. "An appeal may be taken only from a final judgment." *Blaney v. Black Jack Oil Co.*, 325 So. 3d 1204, 1206 (¶8) (Miss. Ct. App. 2021). "This Court will dismiss uncertified interlocutory appeals." *Id.* And "[w]ithout the entry of a Rule 54(b) certificate, a trial court order which disposes of less than all of the claims against all of the parties in a multiple party or multiple claim action, is interlocutory." *M.W.F.*, 926 So. 2d at 900 (¶4) (referencing MRCP 54).

¶13. "Generally, a final judgment is one that adjudicates the merits of the controversy and *settles all issues between all parties*." *LaFontaine v. Holliday*, 110 So. 3d 785, 787 (¶8) (Miss. 2013) (emphasis added). "In other words, an order is considered final if it *ends* the litigation *on the merits* and leaves nothing for the court to do but execute the judgment." *Id.* (internal quotation mark omitted).

¶14. After briefing was complete, this Court sua sponte ordered supplemental briefing,

---

[1] *See* Miss. Code Ann. § 37-9-109 (Rev. 2023) ("Any employee requesting a hearing shall provide the district, not less than five (5) days before the scheduled date for the hearing, a response to the specific reasons for nonreemployment, a list of witnesses and a copy of documentary evidence in support of the response intended to be presented at the hearing. *If the employee fails to provide this [five-day] information, then the recommendation of nonreemployment shall be final without the necessity of a hearing.*") (emphasis added); *see also* Miss. Code Ann. § 37-9-113(1) (Rev. 2023) ("Any employee aggrieved by a *final decision* of the school board is entitled to judicial review thereof, as hereinafter provided") (emphasis added).

explaining that the Board appealed the trial court's order, and there was no Rule 54(b) order certifying it as final: "Because the chancellor's order remands the matter for further proceedings and does not rule on the merits of the controversy, the Court finds that supplemental briefing is necessary as to whether the chancellor's order is a final, appealable judgment." Both parties filed supplemental briefs, and both sides argued that the case was final for purposes of appeal.

¶15. In this case, Montgomery sought a hearing on the merits to challenge the school district's non-renewal of her employment contract. The Board found that a hearing was not necessary based upon her failure to comply with the applicable statutes. Acting as an appellate court, the chancery court ruled that the Board's failure to spread this decision over the minutes and timely inform Montgomery by providing her with a written copy of the minutes was itself a reversible failure by the Board. The court reversed the Board's affirmance of her non-renewal and ordered the case be remanded back to the Board "for a full hearing on the merits." No decision was ever rendered upon the merits of the case.

¶16. "Generally[,] administrative appeals can only be made from a final order." *Cives Steel Co. Port of Rosedale v. Williams*, 903 So. 2d 678, 680 (¶9) (Miss. 2005). In *Cives Steel*, the appeal was brought after "[t]he circuit court found that more testimony was needed in order to make calculations for temporary partial disability benefits" in a Workers' Compensation dispute. *Id*. This Court had reached a decision and considered the appeal on the merits. *Id*. at (¶8).

¶17. But the Supreme Court turned to an analogous prior case where it had determined a

6

trial court's "remand for further fact-finding was not a final judgment, and the appeal from that remand was interlocutory." *Id.* at (¶10). With that principle in mind, that Court found the "circuit court's order remanding to the Commission to reopen this case for additional testimony . . . was not a final judgment." *Id.* at 680-81 (¶10). The Supreme Court vacated the decision by our Court "and dismiss[ed] the appeal so that proceedings may continue" in the administrative agency. *Id.* at 681 (¶11); *see also G & S Auto Sales v. Walton*, 180 So. 3d 778, 780 (¶7) (Miss. Ct. App. 2015) (dismissing when the administrative judge's "judgment was not a final judgment that disposed of all of the issues between the parties" since "this Court lacks jurisdiction" over non-final appeals).

¶18. While that is the general rule in some administrative cases, there is a different approach in certain types of appeals created by statute. Specifically, the Supreme Court has held that an order remanding a case can constitute a final judgment subject to appeal. *Harbour ex rel. T.D.H v. Tupelo Pub. Sch. Dist.*, 275 So. 3d 70, 74 (¶17) (Miss. 2019). In that case, a child "was suspended from school and placed in an alternative school," but "[t]he chancery court initially reversed and rendered the decision," finding that the disciplinary decision "violated [the student's] due process rights." *Id.* at 71 (¶1). The trial court subsequently "amended its judgment to remand the case[.]" *Id.* The Office of the Attorney General argued on appeal "that the chancery court's remand of the action to the committee amounted to an interlocutory order." *Id.* at 74 (¶12).

¶19. The Supreme Court disagreed, pointing out that it had previously adopted a concurrence from the Court of Appeals that reasoned "'[a] decision by the first level

7

appellate court that the agency was definitely wrong in one of its final decisions, even if the court remands for the agency to conduct further proceedings based on that reversal, is a final judgment that is appealable.'" *Id*. at (¶16) (quoting *J.R. Logging v. Halford*, 765 So. 2d 580, 589 (Miss. Ct. App. 2000) (Southwick, P.J., concurring)). In the case adopting Judge Southwick's concurrence, "the Court determined that the circuit court's order reversing and remanding to the administrative agency was final in nature, because the reversal was procedural and because it was not based on an insufficient record to consider the merits." *Id*. (citing *Southwood Door Co. v. Burton*, 847 So. 2d 833, 838 (Miss. 2003)). Armed with this precedent, the Supreme Court concluded:

> [T]he chancery court's order disposed of the merits, reversing and rendering (later remanding) the case on the due process issue. The instant case is analogous to *Burton*. The chancery court had enough information to make a finding on the merits. The remand was based on a procedural due process issue. Therefore, the order was final and was properly appealed by Harbour.

*Id*. at (¶17).

¶20.    The situation here echoes those in *Harbour* and *Burton*. The chancery court, sitting as an appellate court, reversed and remanded the Board's ruling. The court reasoned that the Board's failure to spread its decision on the minutes and to properly provide the decision to Montgomery in writing afterwards essentially caused a due process violation since "[t]he School Board cannot simply pick and choose what statutes it will adhere to." The court in effect concluded the Board had been "definitely wrong" to the extent "a full hearing on the merits" was required.

¶21.    In accord with this precedent, we conclude that the order remanding the matter for a

8

full hearing before the Board of Trustees was final and subject to appellate review. *See* Miss. Code Ann. § 37-9-113(5) ("Any party aggrieved by action of the chancery court may appeal to the Supreme Court in the manner provided by law").

## II. The failure to follow statutory requirements precludes a hearing on the merits and renders the nonrenewal decision final.

¶22. As to the merits, the Board argues that the chancery court improperly granted Montgomery's request to remand despite her failure to comply with the applicable statute.

¶23. In relevant part, the stated purpose of the Education Employment Procedures Law of 2001 is

> to provide a mechanism for the nonrenewal of licensed education employees in a timely, cost-efficient and fair manner; to provide public school employees with notice of the reasons for not offering an employee a renewal of his contract; to provide an opportunity for the employee to present matters in extenuation or exculpation; to provide the employee with an opportunity for a hearing to enable the board to determine whether the recommendation of nonemployment is a proper employment decision and not contrary to law and to require nonrenewal decisions to be based upon valid educational reasons or noncompliance with school district personnel policies.

Miss. Code Ann. § 37-9-101 (Rev. 2023). Under the EEPL, an employee has certain guarantees, such as entitlement to a nonrenewal notice, *see* Miss. Code Ann. § 37-9-105 (Rev. 2023); "[a]n opportunity for a hearing" regarding the nonrenewal, *see* Miss. Code Ann. 37-9-109(b); and for this hearing to be "fair and impartial . . . . before the board or hearing office[,]" *see* Miss. Code Ann. 37-9-109(c).

¶24. The section of the EEPL governing nonrenewal of contracts stipulates that the employee has certain responsibilities that must be satisfied, or the opportunity for a hearing will be eliminated:

9

> Any employee requesting a hearing **shall** provide the district, not less than five (5) days before the scheduled date for the hearing, a response to the specific reasons for nonreemployment, a list of witnesses and a copy of documentary evidence in support of the response intended to be presented at the hearing.
>
> **If the employee fails to provide this information, then the recommendation of nonreemployment shall be final without the necessity of a hearing**.

Miss. Code Ann. § 37-9-109 (emphases added). Therefore, the Legislature expressly stated in the statute the penalty for an employee's failure to provide these materials prior to a hearing.

¶25. "[A] basic tenet of statutory construction is that 'shall' is mandatory and 'may' is discretionary." *Wallace v. State*, 360 So. 3d 231, 237 (¶22) (Miss. 2023) (quoting *Khurana v. Miss. Dep't of Revenue*, 85 So. 3d 851, 854 (¶9) (Miss. 2012)).

¶26. The EEPL's requirement to provide the "5 day materials" is clearly mandatory. To receive a hearing, an employee must first provide the required information, or "the recommendation of nonreemployment *shall* be final without the necessity of a hearing." Miss. Code Ann. § 37-9-109 (emphasis added). And it cannot be questioned that "the Legislature's statutory use of the term 'shall' connotes a mandatory requirement." *Wallace*, 360 So. 3d at 237 (¶22) (quoting *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 92 (¶17) (Miss. 2010)).

¶27. It is uncontested that Montgomery did not provide the required materials 5 days before the hearing before the Board. The chancery court likewise concluded that she failed to adhere to the statute. Under the clear language of the statute, this means that Montgomery's nonrenewal became final without the benefit of a hearing.

¶28. However, the chancery court strayed from the express language of the statute in inquiring "[w]hether or not Ms. Montgomery's failure to adhere to the five (5) day rule was proper cause to dismiss her hearing." Under the unambiguous language of the statute, "[i]f the employee fails to provide this information, then the recommendation of nonreemployment *shall be final without the necessity of a hearing*." Miss. Code Ann. § 37-9-109 (emphasis added). The statute is binary in nature: an employee either complies or does not comply. Montgomery did not comply here, so the nonrenewal became final without the benefit of a hearing.

¶29. The chancery court further strayed in determining that the mandatory requirement of the provision of these materials could be waived by the Board's subsequent inaction or omission. The statute does not provide such an exception.

¶30. In accord with the express language of our statutory laws, we find the chancery court erred in lifting the mandatory requirement of Montgomery's provision of the 5-day materials. We further find the court erred in remanding for a full hearing before the Board given Montgomery's failure to follow the express terms of the statute.

## CONCLUSION

¶31. While generally an order remanding a matter is interlocutory in nature, in this specific type of administrative appeal, it was final and subject to appellate review. Because the school district employee did not comply with the mandatory statutory provisions requiring a response in a specific manner, we reverse the chancery court's order remanding Montgomery's appeal for a full hearing. Further, we render judgment that her nonrenewal

11

is final and not subject to a hearing.

¶32. **REVERSED AND RENDERED.**

      **BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**